OPINION
RYAN, Circuit Judge.
The plaintiff, Michael Demczyk, a trustee in bankruptcy, appeals the district court’s judgment that the trustee could not recover the proceeds of a letter of credit. The defendant, The Mutual Life Insurance Company of New York (MONY), a creditor, cross-appeals the district court’s order remanding to the bankruptcy court for a recalculation of MONY’s losses.
The trustee claims the district court erred in holding that the trustee had no right to recover a deposit made pursuant to contract, because the deposit was made via a standby letter of credit and that recovery was preeluded by the doctrine of “independence.” The trustee also claims the court erred in holding that the proceeds from the letter of credit were not property of the bankrupt estate, and thus not recoverable by the trustee. MONY argues in its cross-appeal that the court erred in remanding the cases to the bankruptcy court for a recalculation of MONY’s damages.
For the reasons that follow, we will reverse in part and affirm in part.
I.
Before filing in bankruptcy, Graham Square, Inc., sought $8,300,000 in financing from MONY for completion of a building project. MONY- and the debtor, Graham, executed a loan application that obligated the debtor to pay to MONY a refundable loan commitment fee of $332,000 either in cash, or via a standby letter of credit. The debtor contacted his local bank, nonparty Union National Bank (UNB), and arranged for UNB to open a letter of credit in MONY’s favor. MONY subsequently approved a loan for $7,800,000. For various reasons, the debtor was unable to consummate the loan agreement, even after several extensions of the closing date.. Pursuant to the terms of the loan application, MONY then presented a draft to UNB for payment of the loan commitment fee against the letter of credit. UNB found the documents to be in order and paid the draft. Thereafter, the debtor filed for bankruptcy protection under chapter 11 and, as a debtor in possession, filed an adversary action under relevant bankruptcy code provisions seeking recovery of the commitment fee from MONY. Before trial, the debt- or’s bankruptcy petition was converted to a chapter 7 case and the trustee was substituted for the debtor as the plaintiff.
In its decision, the bankruptcy court assumed, without deciding, that the commitment fee clause was an impermissible penalty clause under Ohio contract law. Given that assumption, the court found that the fee was not recoverable, first, because the doctrine of *827 “independence” prevented the trustee from recovering the commitment fee, and, second, because the fee was paid to MONY by letter of credit out of the property of UNB as principal and on behalf of the debtor, it did not, therefore, constitute property of the estate.
The district court affirmed the bankruptcy court’s decision on slightly different grounds. That court held that there was no property of the debtor’s for the trustee to recover; that is, that the funds transferred to MONY via the letter of credit had been distributed from the assets of UNB. The court held that since the mortgage given by the debtor to finance the letter of credit was worthless, nothing of value had been transferred from the estate and thus there was nothing to restore to the estate.
The trustee and MONY then filed this timely appeal and cross-appeal.
II.
We first examine whether the lower courts erred in holding that the trustee had no right to recover the commitment fee because the fee was paid via a standby letter of credit and recovery was precluded by the doctrine of independence.
Initially we note that subject-matter jurisdiction in these cases arises out of 28 U.S.C. § 158(d), and this appeal ultimately requires us to determine whether the fee is property of the estate pursuant to 11 U.S.C. § 542. To determine the extent of an estate’s interest in property, we must look to property rights defined under state law. See Nobelman v. American Sav. Bank, 508 U.S. 324, 329, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) (citing Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979)). It is not disputed that Ohio law governs. We review de novo the district court’s determination of Ohio substantive law. J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co., 936 F.2d 1474, 1483 (6th Cir.1991); see Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). Where the relevant state law is unsettled, we determine how we think the highest state court would rule if faced with the same case. Commissioner v. Bosch’s Estate, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782-83, 18 L.Ed.2d 886 (1967).
A letter of credit transaction comprises three separate contracts. The first arises from the underlying contract, ordinarily between a buyer and seller, and creates the basis for the letter of credit. That contract is represented in these cases by the financing agreement between the debtor (buyer) and MONY (seller). The second contract arises between the account party, here the debtor, and the bank issuing the letter of credit (UNB). The third contract arises between the issuing bank (UNB) and the beneficiary of the letter of credit, MONY.
The parties used an instrument known as a “standby” letter of credit. This document does not function the same as a commercial letter of credit in that the latter is used in a sale of goods transaction as a payment device, while the standby letter of credit is used in a nonsales transaction as a guarantee against default on contractual obligations. Gerald T. McLaughlin, Standby Letters of Credit and Penalty Clauses: An Unexpected Synergy, 43 Ohio St. L.J. 1, 6 (1982). It is well established that once a beneficiary complies with the terms of the letter of credit, an account party may not prevent the issuing bank from distributing the proceeds of the letter of credit, absent fraud in the underlying contract. Banque Paribas v. Hamilton Indus. Int’l, Inc., 767 F.2d 380, 385 (7th Cir.1985). The doctrine of independence recognizes this principle, and requires that a letter of credit be kept separate from the underlying contract that generates it. This “insulates the letter of credit from disputes over performance of collateral agreements and allows the letter of credit to function as a swift and certain payment mechanism.” Gerald T. McLaughlin, Letters of Credit and Illegal Contracts: The Limits of the Independence Principle, 49 Ohio St. L.J. 1197, 1197 (1989); John F. Dolan, The Law of Letters of Credit: Commercial and Standby Credits § 2.09[6] (2d ed.1991). Critically, and of great importance here, the doctrine of independence protects only the distribution of the proceeds of the letter of credit. It prohibits an attack on the issuing *828 bank’s distribution to the beneficiary and does not address claims respecting the underlying contract. In these cases the trustee has not challenged the distribution of the proceeds by UNB, but instead, has challenged MONY’s right to retain the commitment fee and has brought an action on the underlying contract between the debtor and MONY.
While the fee was paid through the vehicle of a standby letter of credit, and may thus be considered “proceeds” of the letter of credit, it is significant that MONY has already received those funds. It is one thing to attempt to prevent the distribution of the proceeds of a letter of credit, an attempt the doctrine of independence is designed to prevent; but it is quite another to bring an action on the underlying contract that created the letter of credit.
If the debtor had paid MONY the commitment fee in cash, the debtor could seek a refund by challenging the fee provision in the underlying contract as an illegal penalty. All of MONY’s arguments aside, there is no principled reason for allowing a challenge to the underlying contract when the fee is paid in cash, and not allowing such a challenge after the fee is paid via a standby letter of credit. In other words, challenging the distribution of the proceeds of a letter of credit is different than challenging the underlying contract. The ultimate result may be the same (refund of the fee), but in one case the method of recovery is permissible and in the other it is barred.
We hold that the doctrine of independence does not apply to this case, and the lower courts erred in so holding.
III.
The bankruptcy court also assumed, without deciding, that the commitment fee clause was an impermissible penalty clause under Ohio’s law on contracts. We think the court erred in that assumption. Because the district court did not correct the error, and because our ultimate decision is to reverse and remand this case, it is appropriate to explain why the commitment fee provision is not a penalty clause.
As a general rule in Ohio, parties are free to enter into contracts that contain provisions which apportion damages in the event of default:
The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint. Responsibility for the exercise, however improvident, of that right is one of the roots of its preservation.
Blount v. Smith, 12 Ohio St.2d 41, 231 N.E.2d 301, 305 (1967).
The Ohio Supreme Court has recognized that, in certain circumstances, complete freedom of contract is not permitted for public policy reasons. One such circumstance is when stipulated damages constitute a penalty. “Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, ‘[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.’ ” Lake Ridge Academy v. Carney, 66 Ohio St.3d 376, 613 N.E.2d 183, 187 (1993) (quoting Restatement (Second) of Contracts § 355 (1981)). “ ‘Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy.’ ” Id (citation omitted). Defining a punitive remedy as one that subjects the breaching party to a liability “ ‘disproportionate to the damage which could have been anticipated from breach of the contract,’ ” the court held that “ ‘[t]he characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract.’ ” Id., 613 N.E.2d at 188 (citations omitted). A penalty, therefore, is designed to coerce performance by punishing nonperformance; its principal object is not compensation for the losses suffered by the nonbreaching party.
Contracting parties, however, may provide in advance for damages to be paid in the event of a breach “as long as the *829 provision does not disregard the principle of compensation.” Restatement (Second) of Contracts, supra, at § 356 cmt. a. Such damages are typically referred to as liquidated damages. To determine whether stipulated damages are punitive or liquidated:
[I]t is necessary to look to the whole instrument, its subject-matter, the ease or difficulty of measuring the breach in damages, and the amount of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach, and also to the intent of the parties ascertained from the instrument itself in the light of the particular facts surrounding the making and execution of the contract.
Jones v. Stevens, 112 Ohio St. 43, 146 N.E. 894, 894 (1925) (syllabus). “ ‘Neither the parties’ actual intention as to its validity nor their characterization of the term as one for liquidated damages or a penalty is significant in determining whether the term is valid.’ ” Lake Ridge Academy, 613 N.E.2d at 188 (citations omitted). “Thus, when a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced.” Id.
In Ohio, contract clauses “providing for reasonable liquidated damages are recognized ... as valid and enforceable.” Samson Sales, Inc. v. Honeywell, Inc., 12 Ohio St.3d 27, 465 N.E.2d 392, 393 (1984). “However, reasonable compensation for actual damages is the legitimate objective of ... liquidated damages provisions and where the amount specified is manifestly inequitable and unrealistic, courts will ordinarily regard it as a penalty.” Id., 465 N.E.2d at 393-94; see Sheffield-King Milling Co. v. Domestic Science Baking Co., 95 Ohio St. 180, 115 N.E. 1014, 1014 (1917) (syllabus).
In Samson Sales, 465 N.E.2d 392, the Ohio Supreme Court set forth the test for determining whether a liquidated damages clause is enforceable.
Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
Id., 465 N.E.2d at 392 (syllabus).
When conducting the analysis required by Samson, we must “ ‘construe the contract by its four corners in the light of the situation of the parties at the time of the execution of the contract.’ ” American Fin. Leasing & Servs. Co. v. Miller, 41 Ohio App.2d 69, 322 N.E.2d 149, 152 (1974) (quoting Miller v. Blockberger, 111 Ohio St. 798, 146 N.E. 206, 209 (1924)).
Here, the relevant contract language reads:
Accompanying this Application is a deposit (“Commitment Pee”) of $332,000 to be held without interest and returned to Applicant if this Application is not approved within forty-five (45) days...: The Commitment Fee may be in the form of cash or an irrevocable letter of credit____
Upon approval of this Application by MONY, the Commitment Fee shall be retained by MONY as its earned fee paid by Applicant in consideration of the expenses which MONY as prospective mortgagee has incurred or "will incur in considering and approving this Application, and in further consideration of MONY holding itself ready and willing to make the Loan. MONY agrees to return the Commitment Fee to Applicant, without interest, if, but only if, all conditions of Closing have been satisfied and the Loan has actually closed *830 pursuant to this Application. In the event Applicant fails to comply with any of the covenants and conditions contained in this Application and the Loan is not closed prior to the Termination Date, then MONY shall have the right to retain the Commitment Fee, and, in addition, specifically reserves any and all rights it may have in law or in equity, including, but not limited to, specific performance, the right to claim and receive the Processing Fee, the Engineering Fee, and damages for loss of bargain sustained by MONY as a result of such default. Applicant agrees that MONY will be deemed to have earned the Commitment Fee upon MONY’s acceptance of this Application.
The application provided that the processing fee was $16,000; the engineering fee was $4,000; and at closing the nonrefundable commitment fee was $117,000.
Here, a witness testified for MONY that at the time the parties entered into the contract, it was routine practice to charge a refundable commitment fee of up to 4%. Further, he testified that the purpose of the fee was to protect MONY from the financial loss that would occur if the deal did not close. In order to grant a mortgage of the magnitude requested by the debtor, MONY incurred a liability to secure the funds necessary to make the loan. By matching the dollar amount and interest rate of the liability with the amount and interest of the mortgage, MONY endeavored to protect itself from fluctuations in interest rates. If the mortgage did not close but MONY had already incurred a liability, MONY would be left owing a debt with no offsetting income to repay the debt. That is exactly what occurred in this case. Once the debtor failed to close on the multi-million dollar loan, MONY was forced to seek another borrower for the funds.
The commitment fee was $332,000: 4% of the original $8,300,000 loan requested by the debtor, and 4.2% of the $7,800,000 loan ultimately approved and guaranteed by MONY. We think that, given the risk involved in guaranteeing a loan of this magnitude; including particularly the risk of a fluctuating money market as well as the time spent investigating the quality of the proffered security and otherwise putting the transaction together, we cannot say, as a matter of law, that the agreed upon commitment fee was other than “reasonable compensation for actual damages.” Samson Sales, 465 N.E.2d at 393-94.
The lower courts erred in finding that the commitment fee clause constituted an impermissible penalty under Ohio contract law.
IV.
Our conclusion that the clause was not a penalty provision does not end our inquiry. MONY also claims that, under the contract, the commitment fee is earned at the moment MONY approves the loan application. In other words, the fee is consideration for MONY’s agreement to make the loan and set the funds aside. However, this argument seems inconsistent with language in that contract stating that the fee is refundable if the debtor executes the approved loan. It is well settled in Ohio that courts attempt to reconcile inconsistent contract terms and give effect to each term. See German Fire Ins. Co. v. Roost, 55 Ohio St. 581, 45 N.E. 1097, 1099 (1897); Mon-Rite Constr. Co. v. Northeast Ohio Reg’l Sewer Dist., 20 Ohio App.3d 255, 485 N.E.2d 799, 802 (1984).
The bankruptcy court assumed, without deciding, that the clause was a penalty clause. Given this assumption, the court held the fee unrecoverable pursuant to the doctrine of independence. The court did not decide whether the fee constituted an earned fee. Likewise; the district court did not address this issue. Instead, the court held that the trustee was unable to reach the fee because the estate did not have an attachable interest in the fee. We think the district court should be given an opportunity to consider, in the first instance, whether the commitment fee is an earned fee.
V.
Finally, we address whether the district court erred in holding that the proceeds from the letter of credit were not property of the estate, and thus not recoverable by the trustee.
*831 While state law determines the debtor’s property interest in the deposit held by MONY, “the extent to which a debtor’s interest in property creates ‘property of the estate’ for turnover purposes is a question of federal law.” In re Amdura Corp., 167 B.R. 640, 644 (D.Colo.1994) (citing, inter alia, United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)), aff'd, 75 F.3d 1447 (10th Cir.1996). Under federal bankruptcy law, any property of the debtor’s estate which “the trustee may use, sell, or lease” pursuant to 11 U.S.C. § 363 must be turned over to the trustee by any entity “in possession, custody, or control” of such property. 11 U.S.C. § 542(a). “Property of the estate” includes “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. §' 541(a)(1). Under 11 U.S.C. § 541, the trustee succeeds only to the title and rights in property that the debtor had and takes the property subject to the same restrictions that existed at the time the debtor filed the petition. See Calvert v. Bongards Creameries (In re Schauer), 835 F.2d 1222, 1225 (8th Cir.1987). Thus, a debtor’s rights may not be expanded beyond what they were at the commencement of the case.
Here, the district court found that the debtor had no rights in the $332,000 proceeds from the letter of credit because when the debtor entered into the contract with UNB to open the letter of credit, the collateral given by the debtor was already encumbered by other liens in excess of the value of the property. Therefore, reasoned the district court, because the debtor gave no consideration for UNB’s issuance of the letter of credit, the debtor had nothing to recover in a suit for restitution.
We find several critical errors in the district court’s reasoning. First, both the U.C.C. and Ohio’s enactment of the U.C.C. do not require consideration to establish a letter of credit. Ohio Rev.Code Ann. § 1305.04 (Banks-Baldwin 1997); U.C.C. § 5-105.
Second, even if consideration were required, the debtor’s promise of repayment is, itself, consideration which serves to bind the debtor to the contract. The fact that the collateral given to secure payment was inadequate is inconsequential; UNB may still seek recourse against the debtor. The district court erred in equating consideration with collateral.
Finally, the debtor’s cause of action is based upon the underlying contract and not on the letter of credit. The characterization or status of the $332,000 had passed from “proceeds of the letter of credit” to “commitment fee under the contract.”
We have previously held that property of the estate includes the debtor’s interest in a cause of action. Cottrell v. Schilling (In re Cottrell), 876 F.2d 540, 542 (6th Cir.1989). Further, under 11 U.S.C. § 541(a), equitable title unquestionably constitutes property of the estate. The scope of section 541(a)(1) is broad, includes tangible and intangible property, and allows the bankruptcy “trustee to regain possession of property in which the debtor had equitable as well as legal title.” Whiting Pools, 462 U.S. at 204 n. 8, 205, 103 S.Ct. at 2313 n. 8, 2314.
We find that the district court erred in holding that there was no property of the estate for the trustee to recover.
VI.
Both parties have admitted that the bankruptcy court’s calculation of MONY’s damages was in error. Because we remand to the district court on the issue whether the commitment fee is an earned fee, we will affirm the district court’s remand for a recalculation of damages.
VII.
For the reasons outlined above, we think the commitment fee was not an impermissible penalty, but may have been an earned fee. However, because neither of the lower courts specifically addressed the status of the fee, we REVERSE and REMAND these cases to the district court With instructions to determine whether the commitment fee was, in fact, an earned fee. We also REVERSE the district court’s judgment that the commitment fee was not property of the estate. Further, we AFFIRM the district court’s *832 decision that the damages suffered by MONY must be recalculated on remand.