LAKE RIDGE ACADEMY, APPELLEE, *v.* CARNEY, APPELLANT.

[Cite as *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376.]

(No. 91–2464—Submitted January 20, 1993—Decided June 16, 1993.)

*Fauver, Tattersall & Gallagher, John L. Keyse–Walker* and *Kurt D. Anderson,* for appellee.

*Calfee, Halter & Griswold* and *Joseph D. Carney; Major & Associates* and *James L. Major; McDonald, Hopkins, Burke & Haber Co., L.P.A.,* and *Kenneth J. Walsh; Robert M. Greggo,* for appellant.

WRIGHT, J. This case requires the court to resolve two issues: whether Carney breached his contract with Lake Ridge and, if so, whether Lake Ridge is entitled to stipulated damages in the amount of the full tuition due under the contract. We hold that Carney had a duty to make the scheduled tuition payments and that by not doing so he breached the contract. We also hold that Lake Ridge is entitled to the full tuition due under the contract.

I

Carney argued, and the trial court agreed, that he did not breach the contract because he substantially complied with its terms. The court ruled that Carney "substantially complied with the cancellation provision of the contract when the cancellation letter was dated August 1, 1989, mailed or postmarked August 7, 1989, and received August 14, 1989."

The court of appeals disagreed. The court framed its analysis partly in terms of whether time was of the essence in the contract. Quoting its own precedent for the rule that time is of the essence in a contract " 'where a definite date is fixed for compliance,' " the court held that Carney breached the contract by refusing to pay the entire tuition obligation after his untimely failure to cancel. We agree with the court of appeals' conclusion but do so for different reasons.

We do not believe that the question here is whether time was of the essence. "When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential *in order to enable him to require performance from the other party.*" (Emphasis added.) 6 Williston on Contracts (3 Ed.1962) 181, Section 846. If time is not of the essence and the obligor has substantially complied with the terms of the

contract, the obligee's duty to perform is *not* discharged. In this case Lake Ridge does not argue that its obligation to educate Michael Carney was discharged or altered by his father's inaction prior to August 1. Thus, whether time was of the essence is not the correct inquiry.

Similarly, the question of substantial performance is not germane to our analysis. There is no reasonable argument that Carney "substantially complied" with the provision of the contract requiring him to notify Lake Ridge of his child's withdrawal prior to August 1. The referee found that Carney's notice of cancellation was not received by Lake Ridge until after the August 1 deadline had passed. Thus, Carney did not comply *at all* with the requirement that cancellation take place prior to August 1. There appears to us to be no question of substantial performance in this case.

We interpret the contract and the cancellation clause as follows: Under the agreement signed in March 1989, Carney reserved a spot in the fourth grade class at Lake Ridge for his son in exchange for a $630 deposit and a promise to pay the balance of the tuition later that year. The contract gave Carney the option to cancel the agreement and withdraw his son without having to pay the rest of the tuition if he did so prior to August 1. If Carney chose not to exercise this right he would remain obligated to pay the full tuition. *By the express terms of the contract Carney's ability to unilaterally repudiate the agreement expired on August 1.*

It is important to understand that the contract as a whole explicitly obligated Carney to pay the full tuition and the last paragraph provided him with only a limited escape clause. This clause was placed in the contract for the benefit of the parents and to the detriment of Lake Ridge, which *could have* required full payment at the time the contract was entered into. Lake Ridge Headmaster Joseph J. Ferber testified why August 1 was selected as the date before which parents had to notify the school of cancellation:

"Well, on the one hand, we feel we must have a day for parents to pay tuition, and must have a contract that says that's enforceable in order for us to be able to collect revenue; otherwise, we would be in financial difficulty.

"We pick August 1st to give our parents as much time as possible between their deposit in March and the beginning of the school year to make a financial decision as a convenience to them. But we feel that August 1st is as far as we want to go prior to the start of the school year in order for us to be able to collect our revenue for expenses that are ongoing regarding the operations of the school."

Carney did not exercise his right to cancel the contract before August 1. By letter postmarked August 7 he repudiated the contract and withdrew his son. This repudiation, however, did not relieve him of his existing duty to pay

the full tuition because it was not communicated to Lake Ridge before August 1. When Carney subsequently failed to make the scheduled tuition payments, he breached the contract.

While not precisely the same, this contract is similar to an option contract and a similar approach is appropriate. In an option contract, a party may exercise its option *only* in the manner provided in the contract. *Midland Properties Co. v. Union Properties, Inc.* (N.D.Ohio 1957), 148 F.Supp. 150, 152. If a time limit is given for exercising an option, the option may not be exercised after that time has passed. *Longworth v. Mitchell* (1875), 26 Ohio St. 334, 342.

Today we adopt similar rules for cases involving school reservation agreements: Under a school reservation agreement, when a parent is given the option to cancel the agreement before a certain date without incurring liability for the full tuition and does not do so, the parent may become liable for the full tuition if the contract so provides. The parent's notification of cancellation, if given after the option date, is ineffective to discharge this liability. Subsequent failure to make scheduled tuition payments constitutes a breach of contract.[1]

As part of the contract in this case, Carney was given the option to cancel. That option expired, by the express terms of the contract, on August 1. As of August 1 any attempt by Carney to exercise his option to cancel—including his letter postmarked August 7—was ineffective. Carney, therefore, breached his contract with Lake Ridge by not making the scheduled tuition payments.

## II

We now turn to the question of whether the cancellation provision is unenforceable as a penalty. "It is virtually the unanimous rule of all jurisdictions that whether a stipulation is for liquidated damages or a penalty is a question of law for the court." *Ruckelshaus v. Broward Cty. School Bd.* (C.A.5, 1974), 494 F.2d 1164, 1165. Carney argues that the clause requiring

---

1. Cases in which the student becomes unable to attend school are distinguishable. In *Groff v. Hertenstein* (1910), 12 Ohio C.C. (N.S.) 515, the student was forced to withdraw from school due to illness. The court held that the school was not entitled to the full year's tuition. It wrote that the parties "must have acted upon the assumption that if any such event intervened whereby the boy was rendered physically incapable of attending the school, then the agreement for the full school year would be discharged." *Id.* at 517. The court's decision rested on the doctrine of impossibility. *Id.*

Our decision today is not intended to disturb this precedent. There is no evidence in the record that Michael Carney was unable for any reason to attend Lake Ridge. Thus, the doctrine of impossibility is not implicated.

him to pay the full tuition is a "penalty" and is therefore unenforceable as a matter of law. The court of appeals held that the clause is not punitive but, instead, is a valid liquidated damages provision. We agree with the court of appeals.

## A

As a general rule, parties are free to enter into contracts that contain provisions which apportion damages in the event of default. "The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint. Responsibility for the exercise, however improvident, of that right is one of the roots of its preservation." *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 253, 231 N.E.2d 301, 305.

In certain circumstances, however, complete freedom of contract is not permitted for public policy reasons. One such circumstance is when stipulated damages constitute a penalty. Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, "[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." 3 Restatement of the Law 2d, Contracts (1981) 154, Section 355. "Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy." *Id.* at 157, Section 356, Comment *a.*

A punitive remedy is one that subjects the breaching party to a liability "disproportionate to the damage which could have been anticipated from breach of the contract * * *." 5 Williston on Contracts (3 Ed.1961) 668, Section 776. "The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract." *Garrett v. Coast & S. Fed. S. & L. Assn.* (1973), 9 Cal.3d 731, 739, 108 Cal.Rptr. 845, 850, 511 P.2d 1197, 1202. A penalty is designed to coerce performance by punishing nonperformance; its principal object is *not* compensation for the losses suffered by the nonbreaching party.

Contracting parties, however, may provide in advance for damages to be paid in the event of a breach "as long as the provision does not disregard the principle of compensation." 3 Restatement of Contracts, *supra,* at 157, Section 356, Comment *a.* Such damages are typically referred to as liquidated damages.

Determining whether stipulated damages are punitive or liquidated is not always easy: "[I]t is necessary to look to the whole instrument, its subject-

matter, the ease or difficulty of measuring the breach in damages, and the amount of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach, and also to the intent of the parties ascertained from the instrument itself in the light of the particular facts surrounding the making and execution of the contract." *Jones v. Stevens* (1925), 112 Ohio St. 43, 146 N.E. 894, paragraph one of the syllabus. "Neither the parties' actual intention as to its validity nor their characterization of the term as one for liquidated damages or a penalty is significant in determining whether the term is valid." 3 Restatement of Contracts, *supra*, at 159, Section 356, Comment *c*. See *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 28, 12 OBR 23, 24, 465 N.E.2d 392, 394. Thus, when a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced. See 3 Restatement of Contracts, *supra*, at 157, Section 356(1).

### B

The test developed in Ohio to judge a stipulated damages provision was set forth in *Samson Sales, Inc. v. Honeywell, Inc., supra:*

"Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." *Id.* at paragraph one of the syllabus, citing *Jones v. Stevens, supra,* paragraph two of the syllabus.

Using this test, we conclude that the damages in this case are liquidated damages.

First, when Carney and Lake Ridge entered into their contract in March 1989, the damages that Lake Ridge might suffer as a result of a breach by Carney were "uncertain as to amount and difficult of proof." As the court of appeals explained, Lake Ridge goes through a long budgeting process which begins each year in January and ends in the fall. The tuition money paid by

students is pooled and goes towards staff salaries and benefits, department budgets, student materials, maintenance, improvements, and utilities. Trial testimony reveals that the school budget process is often an uncertain science; it is quite clear that Lake Ridge would be unable to calculate and prove the precise damages caused by the loss of one student's tuition.

Second, the contract as a whole is not "so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties." "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker–Thomas Furniture Co.* (C.A.D.C.1965), 350 F.2d 445, 449. A contract is unconscionable if it did not result "from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." *Kugler v. Romain* (1971), 58 N.J. 522, 544, 279 A.2d 640, 652. The crucial question is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?" *Williams, supra,* at 449.

The contract as a whole in this case is not unconscionable. Carney is an attorney with over twenty years of experience. He frequently deals with contracts as a lawyer and as a businessperson. The parties appear to have dealt with each other at arm's length and there is no evidence of coercion or duress. The damages clause is printed on the front of the one-page contract in the same print size as the other clauses; it is legible and in plain English. In short, we see no evidence that Carney was pressured into signing a contract the terms of which he could not easily see and understand.

Nor is the contract as a whole unreasonable. The headmaster testified that August 1 was chosen as the day before which notice of cancellation had to be given simply because the school had to know in order to meet its financial commitments. Carney had almost five months after he signed the contract to decide whether to cancel it. Because Lake Ridge's financial commitments became more firm as the school year approached, it is reasonable to assume that by August 1 the school was relying on Carney's full tuition payment.

Finally, damages in the amount of the full tuition are not disproportionate to the actual damages suffered by Lake Ridge. Because by August 1 the Lake Ridge budget was nearly finalized and it assumed revenues which included Carney's full tuition, it is not unreasonable to conclude that Lake Ridge's actual damages were the equivalent of one full tuition. The headmaster testified that if Lake Ridge enjoyed any savings from Michael Carney's

withdrawal, they were "minuscule." While we cannot say that Lake Ridge's actual damages were exactly equivalent to full tuition, we can say with conviction that full tuition is not *disproportionate* to the school's actual damages.

The third prong of the *Samson Sales* test is whether the "contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." The language in the Carney–Lake Ridge contract is so clear that we can only conclude that it represents the intentions of the parties. The relevant provision reads: "If enrollment is cancelled after August 1, parents or guardians financially responsible for student are obligated to pay the full Tuition, books and supplies charges." This statement appears immediately above the signature lines in full-size print. When parties make mutual promises and integrate them "into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. We have no reason to believe that the plain language of the damages provision does not represent the parties' intent.

On March 15, 1989, Carney signed the agreement obligating him to pay a total fee of $6,240. This sum included $6,100 for tuition and $140 for books and supplies. At that time he tendered a $630 deposit, leaving an unpaid balance of $5,610.[2] In accordance with the final paragraph of the contract, when Carney failed to cancel the agreement before August 1 he became liable for this balance.

### C

Carney argues vehemently that Lake Ridge had a responsibility to mitigate its damages after it received his cancellation. We reject this argument for two reasons: First, it is not a proper statement of the law and, second, we do not believe that Lake Ridge would have been able to mitigate its damages even if it was obligated to do so.

In *Wassenaar v. Panos* (1983), 111 Wis.2d 518, 331 N.W.2d 357, the Supreme Court of Wisconsin considered whether an employee had the duty to mitigate his damages after his employer breached their employment contract,

---

2. The trial court determined that $5,610 is the balance Carney owes Lake Ridge under the contract. The court found that because the $200 gift to the Capital Improvement Fund was "optional," Carney is not liable to Lake Ridge for it. We agree with the court's conclusion. The liquidated damages provision of the contract specifically states that Carney is "obligated to pay the full Tuition, books and supplies charges." Because the donation to the fund is not listed in this provision, it is not part of the liquidated damages owed by Carney.

which contained a liquidated damages clause. Citing Professor Corbin's treatise on contracts, the court stated: "While evidence of the employee's earnings after the employer's breach may be relevant in meeting the employer's burden of proving that the stipulated damages clause is unreasonable, once the court determines that the clause is reasonable, proof of the employee's actual loss (including what he earned or might have earned on another job) is no longer relevant. * * * We hold that once a stipulated damages clause is found reasonable, the liquidated damages should not be reduced at trial by an amount the employee did earn or could have earned." *Id.* at 542, 331 N.W.2d at 369.

We agree with the Wisconsin court's rule. A valid liquidated damages clause contemplates the nonbreaching party's inability to identify and mitigate its damages. If damages are "uncertain as to amount and difficult of proof," as they must be, the nonbreacher cannot be expected to reduce them after a breach. As a matter of law, because the liquidated damages clause is valid, Lake Ridge did not have a duty to mitigate its damages following Carney's breach.

Even if Lake Ridge had a duty to mitigate its damages, we do not believe that it was in a position to do so on August 14 when it received Carney's letter. Professor Williston wrote that "[i]n several cases, the right of a school to recover the full annual tuition charge when the pupil was expelled for proper cause or left without reason before the close of the year has been allowed. The only justification for this can be the fact, if it is a fact, that one less pupil involves no saving of expense to the school." 11 Williston on Contracts (3 Ed.1968) 273, Section 1352. We believe that this is indeed a fact. By August 14 the school had budgeted its major costs and had no way to reduce them to compensate for the loss of one student. The parties agreed that there were no students on a waiting list to take Michael Carney's place and we feel that Lake Ridge could not reasonably be expected to recruit a new student so close to the beginning of the school year. In short, the record does not reveal to us exactly how Lake Ridge could have reduced its damages.

## D

Our decision today is consistent with rulings by courts in other jurisdictions that have considered similar issues. In *Wentworth Military Academy v. Marshall* (1955), 225 Ark. 591, 283 S.W.2d 868, a military academy sued the parents of a child, who voluntarily withdrew after the school term had begun, to recover the balance of the tuition. The admissions contract stated that it was subject to the terms set forth in the school catalogue. The catalogue provided: "In case of suspension, dismissal, or voluntary withdrawal, no

money paid on tuition or other fees will be refunded and any unpaid balance shall become immediately due and payable." *Id.*, 225 Ark. at 593, 283 S.W.2d at 869. The court held that the parents were "obligated to pay the full amount for one full term of school." *Id.* Accord *Drucker v. New York Univ.* (1969), 59 Misc.2d 789, 300 N.Y.S.2d 749; *Bergman v. Bouligny* (D.C.Mun.Ct. of App.1951), 82 A.2d 760. See, also, Annotation, Absence from or Inability to Attend School or College as Affecting Liability for or Right to Recover Payments for Tuition or Board (1983), 20 A.L.R.4th 303.

## III

The judgment of the court of appeals is affirmed. The cause is remanded to the Elyria Municipal Court to enter judgment in favor of Lake Ridge Academy for contract damages in the amount of $5,610.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS and F.E. SWEENEY, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

PFEIFER, J., dissenting. I respectfully dissent from the majority's opinion. The facts in this case require this court to make a close call of whether the $6,240 claimed by Lake Ridge Academy ("Lake Ridge") is liquidated damages or a penalty.

Because Lake Ridge was in a position to accurately determine that the damages it would suffer as a result of Carney's withdrawal were an amount less than a year's tuition, and because the damages in the contract were not less than this tuition amount, the forfeiture clause is a penalty. The damages incurred by Lake Ridge totalled some amount less than the annual tuition rate. For example, the contract itself clearly states that $140 of the $6,240 is devoted to the variable cost of "books and supplies" that the student uses throughout the school year. Even the school's headmaster concedes that Lake Ridge incurs savings as a result of the Carney child's withdrawal. Thus, while the precise amount of damages owed to Lake Ridge may have been uncertain at the time the parties entered into a contract, it is unquestionable that the parties knew that these damages would total an amount less than the full annual tuition.

For the forfeiture clause in the contract to be an enforceable liquidated damages clause, it must reflect this certainty by charging some amount less than the annual tuition rate. Because the damages clause in the contract between Lake Ridge and Carney is not less than the annual tuition, it is an unenforceable penalty provision.

Finally, some might construe the majority's opinion as an endorsement for schools that educate children in less affluent families to unjustifiably enforce similar contractual provisions. Under these circumstances, however, I am confident that this court would find the provisions to be unconscionable.

The judgment of the court of appeals should be reversed.

RESNICK, J., concurs in the foregoing dissenting opinion.