{¶ 27} In concluding that appellant's evidentiary materials were sufficient to meet his summary judgment burden in regard to the "procedural" prong of the test for establishing unconscionability, the majority opinion relies upon three basic facts. While I do not disagree with the majority's general statement of those three facts, I believe that the majority has essentially misinterpreted those facts in the context of the entire factual scenario. That is, it is my opinion that the cited facts actually support the conclusion that the settlement agreement between appellee's original attorney and appellant was not the product of improper behavior which precluded a true meeting of the minds. As a result, I respectfully dissent from the decision to reverse the granting of summary judgment.
 {¶ 28} The first fact cited by the majority concerned the distinctions between the education and experience of the attorney and those of appellant. In recognizing that the general principle of unconscionability is intended to protect an individual who has become a party to a contract without having a meaningful choice in the matter, the Supreme Court of Ohio has indicated that the lack of education is relevant to the determination when it deprives the person of a reasonable chance to understand the terms of the contract. Lake Ridge Academy v. Carney (1993),66 Ohio St.3d 376, 383. Stated differently, a lack of education can only form the basis of a finding of unconscionability when the person can therefore be readily deceived or taken advantage of.In re Estate of Frederick (Wyo. 1979), 599 P.2d 550, 556.
 {¶ 29} In this instance, even though the evidentiary materials plainly established that appellee's original attorney had superior legal knowledge at the time that the settlement agreement was negotiated, there was also nothing in those materials indicating that appellant was either incapable of understanding the general terms of the agreement or readily susceptible to possible deception. Instead, the fact that appellant had operated his own business for many years and had negotiated numerous contracts supports the conclusion that his lack of any legal education did not render him incapable of "grasping" the gist of the agreement. In regard to this point, I would note that appellant was fully able to explain the substance of the agreement during his deposition. Accordingly, if there was any portion of the agreement which he did not understand, he was certainly capable of requesting an explanation.
 {¶ 30} Pursuant to the majority's analysis, any agreement negotiated between a lawyer and a layperson could possibly be deemed unconscionable as a result of the difference in education and experience. However, as I interpret the relevant case law, such a difference can only be controlling when it places the layperson at such a disadvantage that he cannot understand the nature of the contract. Lake Ridge Academy, supra. In this case, this type of disadvantage simply did not exist.
 {¶ 31} The second fact referenced by the majority pertained to the statement of appellee's attorney that appellant could face time in the penitentiary in light of the trespass upon appellee's property. As to this point, it should first be noted that appellant never referred to this statement in both his deposition and his affidavit. Thus, even if the statement was actually made in appellant's presence, it would appear that the statement did not influence him in initially deciding to accept the settlement agreement.
 {¶ 32} Moreover, I would emphasize that, although the attorney's "penitentiary" statement was not technically correct, an individual who is found guilty of a misdemeanor trespass can be given a minimal jail term as part of his sentence. Nevertheless, while I would agree with the majority that most people would not use the phrase "penitentiary offense" to refer to a crime for which the maximum sentence is thirty days, I simply cannot agree that appellant was somehow misled by the employment of the phrase. At worst, appellee's attorney was engaging in meaningless hyperbole. If appellant needed to know what the attorney meant by the phrase, he could have readily asked the attorney to explain or consulted with his own attorney.
 {¶ 33} The last fact cited by the majority in support of its determination concerns the disagreement over whether the funds to be paid by appellant was intended to also cover attorney fees and punitive damages. Regarding this particular issue, I would indicate that, in discussing the terms of the agreement during the course of his deposition, appellant demonstrated that he had understood at the time of the negotiations that he would be paying the funds in order to compensate appellee for certain damages and to be permitted to continue to use the property. Hence, there was no factual dispute as to whether he understood the essential terms of the agreement when he gave his check to the attorney. For this reason, I would hold that there was an adequate meeting of the minds in this instance.
 {¶ 34} Taken as a whole, the evidentiary materials before the trial court showed that the primary reason why the settlement agreement was negotiated so quickly was appellant's desire to resolve the dispute so that he and his employees could continue to work. While I would agree that appellee's attorney may have played upon this predilection to the benefit of his client, he did not employ any procedure which deprived appellant of his capability to understand the agreement and enter into it on his own free will. However admirable or unique appellant's predilection might be, it should not be employed to transform normal negotiation techniques into procedural unconscionability.
 {¶ 35} Before a finding of unconscionability can be made, a quantum of evidence must be presented as to each prong of the doctrine. Jeffrey Mining Products, L.P. v. Left Fork Mining Co.
(2001), 143 Ohio App.3d 708, 718. Although some courts have applied a "sliding-scale" analysis in determining whether certain facts support a finding of unconscionability in a specific case, see, Am. Software, Inc. v. Ali (Cal.App. 1996),54 Cal. Rptr.2d 477, the application of this precedent in this matter would not change the outcome. That is, the terms of the underlying settlement agreement are not so unfair or unreasonable as to warrant a finding of unconscionability when there is a complete absence of any evidence concerning the procedural prong of the test. Therefore, the trial court did not err in granting summary judgment as to appellant's defense of unconscionability.
 {¶ 36} Finally, even though the second assignment was not addressed as part of the majority opinion, I would also hold that appellant's evidentiary materials were not sufficient to raise a factual dispute in regard to the defense of duress. During his deposition, appellant expressly indicated that he could have left the attorney's office at any time prior to the completion of the settlement agreement. Moreover, I would again emphasize that the fact that the deal was finalized so quickly was due to appellant's own predilection to resolve the dispute without even waiting to consult with his own lawyer. Under such circumstances, no reasonable person could conclude that appellant had been entered into the deal involuntarily.
 {¶ 37} Because neither of the two assignments in this appeal have merit, I would affirm the trial court's judgment in all respects.