{¶ 11} "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." State ex rel. Carter v. Schotten, 70 Ohio St. 3d 89, 92
(1994). Although neither the trial court nor the parties have recognized it, the issue presented by this case is whether the $10,000 the parties agreed Mr. Williams would pay Quality Mold if he failed to timely pay the 15 monthly installments of $1000 each is an unenforceable penalty. See Sarah M. R. Cravens, Involved Appellate Judging, 88 Marq. L.Rev. 251 (2004). Because I have concluded that it is, I would affirm the trial court's judgment.
 {¶ 12} There is a deeply-rooted freedom of contract in the law, including freedom to agree that a stipulated amount will be payable as liquidated damages upon breach. "As a general rule, parties are free to enter into contracts that contain provisions which apportion damages in the event of default." Lake Ridge Academy v. Carney, 66 Ohio St. 3d 376,381 (1993). That freedom, however, does not extend to an agreement to pay a penalty for breaching: "In certain *Page 6 
circumstances, however, complete freedom of contract is not permitted for public policy reasons. One such circumstance is when stipulated damages constitute a penalty." Id. This restriction on the freedom of contract grows out of the "traditional equitable doctrine of unconscionability." 11 Joseph M. Perillo, Corbin On Contracts: Damages, § 58.1, at 396 (rev. ed. 2005).
 {¶ 13} As noted by the Ohio Supreme Court in Lake Ridge Academy, "[a] penalty is designed to coerce performance by punishing nonperformance; its principal object is not compensation for losses suffered by the nonbreaching party." Lake Ridge Academy, 66 Ohio St. 3d at 381 (emphasis in original). Ohio courts apply a three prong test to determine whether a contract provision calling for payment of a stipulated amount upon breach is an enforceable liquidated damages clause or an unenforceable penalty:
 [T]he amount . . . fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
Id. at 382 (quoting Samson Sales Inc. v. Honeywell Inc.,12 Ohio St. 3d 27, paragraph one of the syllabus (1984)).
 {¶ 14} Considering the third prong first, there is no doubt that the parties intended that Mr. Williams would pay an extra $10,000 if he failed to timely pay any of the fifteen monthly installments. The agreement was made on the record with the trial judge present. After the judge and the parties talked about Mr. Williams's agreement to pay Quality Mold $15,000 at the rate of $1000 a month on the first day of each month beginning May 1, 2005, Quality Mold's lawyer said: "In the event that there is a default, then the judgment is — becomes effective is a $25,000 lump sum judgment." The judge repeated his understanding of the parties' agreement: *Page 7 
"Yes, it is a lump sum judgment for the $25,000 . . . less any payments that may have been made." Upon being asked by his lawyer if he had heard and understood all the terms of the settlement, Mr. Williams responded that he had and did. The third prong of the three part test is satisfied.
 {¶ 15} The second prong is satisfied as well. Both Quality Mold and Mr. Williams were represented by lawyers who were present when they entered into the settlement agreement. There is nothing unconscionable, unreasonable, or disproportionate about the contract, other than the stipulated damages provision, and, therefore, no reason to believe that it did not express the true intention of the parties.
 {¶ 16} The problem, however, is with the first prong. The damages caused by failing to timely pay any or all of the monthly installments are neither uncertain as to amount nor difficult of proof. Failure to pay an installment when it is due would entitle Quality Mold to interest at the legal rate. The $10,000 payment the parties agreed upon has no relationship to the actual damages caused by Mr. Williams's failure to timely make the final payment. "One case in which the courts almost always agree is that, in the absence of legislation, the amount of agreed damages is a penalty and unenforceable where a sum of money is made payable upon default, in the payment of a smaller sum of money, and the difference between the two sums is not merely the interest value of the smaller." 11 Joseph M. Perillo, Corbin On Contracts: Damages, § 58.13, at 477 (rev. ed. 2005).
 {¶ 17} The Ohio Supreme Court considered a case indistinguishable from this one over 140 years ago. In Longworth v. Askren, 15 Ohio St. 370
(1864), the court considered a promissory note given for the purchase of real estate. The note recited the buyer's promise to pay $1000, with interest, over ten years. At the end of the first year, a payment was due for *Page 8 
interest only. At the end of each of the next nine years, the buyer was to pay an equal installment, plus interest that was then due. Finally, the note provided that, if each installment was timely made, the principal amount would be reduced from $1000 to $800: "But if each and every payment is made punctually as due, or before due, or within ten days after each is due, as an inducement to punctuality, two hundred dollars of the amount will be released, and eight hundred dollars and its yearly interest accepted in full payment, but not otherwise."Id. at 371. The debtor failed to timely make the installment payments, although he did pay the full $800 plus the interest that was due before the end of the ten years. The holder of the note sued for the $200 and to foreclose his mortgage on the real estate.
 {¶ 18} The Ohio Supreme Court rejected the holder's argument that the $1000 was the actual purchase price of the lot and the $200 discount a "privilege" included for the debtor's benefit: "Nor can the claim, made by plaintiffs counsel be supported, that the stipulation, for the discharge of the obligation by the punctual payment of eight hundred dollars in installments, is a privilege given to the payer, and inserted for his exclusive benefit. This claim is based on the assumption that the thousand dollars was the sole consideration for the lot, and, consequently, is the amount of the actual debt. But it is as fair to presume, that the omission of the stipulation in regard to the eight hundred dollars would have defeated the sale, as that the insertion of the thousand dollars secured it." Longworth, 15 Ohio St. at 375.
 {¶ 19} The court determined that it was not significant that the note first stated that the debtor promised to pay $1000: "Nor, in our view, does the order in which the sums are stated change their character, or the legal effect of the instrument; for, whether the amount to be paid is to be reduced upon compliance with the terms of payment, or to be increased on a default, is only a different mode of expressing the same thing." Longworth, 15 Ohio St. at 375-76. The court *Page 9 
wrote that, at the time the debtor signed the note, all the seller had a right to expect was timely payment of $800 plus interest. "A default occurred; and, in such a contract, in our opinion, interest is to be regarded as a compensation for the injury caused by the delay. All beyond must be regarded either as penalty or liquidated damages; but under neither form, can the plaintiff be allowed to recover more than what the law deems adequate compensation for the breach." Id. at 376.
 {¶ 20} Under the terms of the note at issue in Longworth, the debtor's obligation would have increased by $200 if he failed to make any one of the principal or interest payments on time. The court concluded that such a result would be "manifestly unreasonable": "This would be so manifestly unreasonable, that we can regard the thousand dollars only in the light of a penalty, inserted and meant to be held in terrorem, for the purpose of stimulating the debtor to promptitude in payment."Longworth, 15 Ohio St. at 377. It concluded that the trial court had correctly determined that the note had been paid in full and that the seller was not entitled to the additional $200.
 {¶ 21} A more recent case with facts very similar to those in this case is Aubrey v. Angel Enters. Inc., 43 Wash. App. 429 (1986). A construction company paid a bonding company $120,000 for a bond it needed to bid on a project, but the bonding company failed to deliver the bond. The construction company sued for its money back plus $50,000 in expenses it allegedly incurred in set-up costs. The parties reached a settlement calling for the bonding company to pay the construction company $125,000. Their agreement, however, included an escalation clause: "In the event of a default in payment of the balance obligation owing on October 20, 1983, then the obligation herein provided for in the sum of $125,000 shall escalate to the sum of $140,000 and shall thereafter bear interest at the judgment rate as otherwise permitted by law, together *Page 10 
with all costs and attorneys' fees otherwise incurred in collection of said obligation subject to credit for any interim payment previously paid together [with] all proceeds received from the sale of any security." Id. at 430. Although the settlement agreement called for the payments to be made with cashier's checks, the bonding company made the last payment of $53,000 with a corporate check, and the construction company claimed its doing so breached the agreement. The bonding company then deposited a $53,000 cashier's check with the trial court. The trial court determined that the construction company was entitled to the proceeds of the cashier's check plus an additional $15,000. The appellate court, however, held that the $15,000 was an unenforceable penalty.
 {¶ 22} In concluding that the $15,000 was an unenforceable penalty, the court in Aubrey distinguished the facts in that case from those that had been before it in an earlier case, Shepherd v. ContinentalBank, 28 Wash. App. 346 (1981). In Shepherd, a bank obtained a judgment against a debtor. In order to settle separate claims the debtor had brought against the bank and its trustees, the bank agreed that the debtor could satisfy the bank's judgment by paying an amount less than the full amount of the judgment. The agreement, however, required the debtor to pay the smaller amount within 120 days. The debtor failed to make the payment within the time allowed, and the bank sought to enforce the judgment for its full amount. The trial court held that the bank was entitled to the full amount of its judgment, and the appellate court affirmed.
 {¶ 23} In distinguishing Shepherd, the court in Aubrey wrote: "There is no penalty in . . . a situation [like that in Shepherd] because the escalation bears a reasonable relation to the actual damages reflected by the larger judgment amount." Aubrey, 43 Wash. App. at 434 (citingShepherd v. Continental Bank, 28 Wash. App. 346, 349 (1981)). InAubrey, however, there had *Page 11 
not been a prior determination that the bonding company owed the construction company $140,000, "[t]hus, the escalation provision in the settlement agreement is in the nature of a penalty because the $15,000 escalation bears no reasonable relation to any damage suffered by the respondents, and the facts indicate that the $53,000 obligation was constructively satisfied no later than 5 days after the last day of the grace period contained in the agreement." Id. at 434.
 {¶ 24} In this case, the parties discussed preparing a judgment for $25,000 to be held under seal by the trial court. Apparently, that judgment was never prepared. Even if it had been, preparing it without filing it would not have kept the $10,000 from being an unenforceable penalty. Just as in Aubrey, there was no prior determination that Mr. Williams owed Quality Mold $25,000. The parties agreed that Quality Mold would settle its claims against Mr. Williams for $15,000 and further agreed that, if Mr. Williams did not timely pay the $15,000, he would be required to pay an additional $10,000. The $10,000 was an unenforceable penalty.
 {¶ 25} Quality Mold was entitled to judgment for the missed $1000 payment, plus interest at the legal rate. Inasmuch as the trial court entered judgment in favor of Quality Mold for $1000 plus interest at the legal rate, its judgment should be affirmed.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1