[Cite as *R.L.R. Invests., L.L.C. v. Wilmington Horsemens Group, L.L.C.*, 2014-Ohio-4757.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


| | | |
|---|---|---|
| R.L.R. INVESTMENTS, LLC, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2013-09-017 |
| | : | O P I N I O N |
| - vs - | | 10/27/2014 |
| | : | |
| WILMINGTON HORSEMENS GROUP, LLC, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |


CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVH2009


Thompson Hine LLP, Anthony C. White, Philip B. Sineneng, 41 South High Street, Suite 1700, Columbus, Ohio 43215-3435 and Jeffrey C. Wade, 600 Gillam Road, Wilmington, Ohio 45177, for plaintiff-appellant

John D. Smith Co., L.P.A., John D. Smith, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for defendant-appellee, Wilmington Horsemens Group, LLC

Christopher S. Cushman, 1019 Main Street, Milford, Ohio 45150, for defendants-appellees, David & Sandra Sharpe

Ira H. Thomsen, 140 North Main Street, Suite A, Springboro, Ohio 45066, for defendants-appellees, Robert S. & Connie S. Menker

James H. Williams, 245 North South Street, Wilmington, Ohio 45177, for defendants-appellees, Donald & Miriam Speaight

**RINGLAND, P.J.**

{¶ 1}  Plaintiff-appellant, R.L.R. Investments, LLC (RLR), appeals from a decision of the Clinton County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Dave and Sandra Sharpe, Robert S. and Connie S. Menker, and Donald and Miriam Speaight (collectively, the Individuals), finding the Individuals not liable in a breach of contract action.  RLR also appeals from a decision in favor of defendant-appellee, Wilmington Horsemens Group LLC (Wilmington Horsemen), finding Wilmington Horsemen not liable for late fees.  For the reasons stated below, we affirm in part and reverse in part the decisions of the trial court.

{¶ 2}  In October 2002, RLR agreed to lease a property to Wilmington Horsemen. Wilmington Horsemen is a limited liability company comprised of six members, the Individuals.  The property was to be used to promote and show animals, specifically horses and dogs.  Wilmington Horsemen and RLR signed a "Lease Agreement" (Lease) that specified the terms and conditions of the agreement.  The Lease provided that the rental term for the property was from January 1, 2003 until December 31, 2008 and Wilmington Horsemen was to pay a monthly rent to RLR of $16,666, payable in two yearly installments on July 1 for $99,996 and December 31 for $99,996.[1]  The Lease also contained a clause discussing late fees (Late Fee Provision) which stated that in the event rent payment is not received by RLR within ten days after the due date, a late charge of $500 per day will be assessed.

{¶ 3}  Attached to the Lease was a document titled "Guaranty of Leases" (Guaranty) where the Individuals guaranteed "the full and prompt payment" of the obligations of Wilmington Horsemen to RLR.  The Guaranty provided that "[n]o revocation or termination of

---

1. The Lease provided for escalating rental payments beginning in year three.  However, in January 2004, the parties modified the rental payments to $16,666 for the remaining years left on the Lease.

- 2 -

this Guaranty shall affect in any manner rights arising under this Guaranty * * *." (Survival Clause). However, the Guaranty also stated: "This Guaranty, and all personal obligations pledged by the undersigned with regard to this Guaranty, shall terminate without notice sixty (60) months from the date this Guaranty is executed." (Expiration Clause). The Guaranty was executed on October 14, 2002.

{¶ 4} In March 2005, the Lease was amended and the monthly rent was reduced to $15,466. In December 2005, Wilmington Horsemen failed to make a timely rent payment to RLR. Eventually, Wilmington Horsemen made a partial rent payment in January 2006 but remained behind on its rental obligation to RLR throughout the remainder of the lease. On November 30, 2008, Wilmington Horsemen and RLR agreed to terminate the lease. At the time of the termination, Wilmington Horsemen owed $302,594 in unpaid rent to RLR. Additionally, Wilmington Horsemen owed an additional $532,500 in late fees to RLR.

{¶ 5} On February 27, 2009, RLR filed suit against Wilmington Horsemen and the Individuals for breach of contract. In regards to the Individuals, RLR argued that they were personally liable for the breach of contract due to the Guaranty. Later, RLR amended its complaint and alleged that the Individuals should also be personally liable for the breach of contract pursuant to a piercing of Wilmington Horsemen's "corporate veil." In June 2011, RLR moved for summary judgment against both Wilmington Horsemen and the Individuals on the breach of contract claims. The Individuals moved for summary judgment on RLR's request to pierce the corporate veil.

{¶ 6} The matter came before a magistrate and on December 28, 2011, the magistrate recommended that RLR's summary judgment motion be granted in regards to its breach of contract claim against Wilmington Horsemen as a corporation. However, the magistrate recommended that the Individuals not be held personally liable for Wilmington Horsemen's obligation under the Lease. Specifically, the magistrate denied RLR's summary

judgment motion regarding the Individuals' liability under the Guaranty reasoning that the Guaranty was ambiguous as to the period of time of its enforceability. The magistrate also granted the Individuals' summary judgment motion regarding piercing the corporate veil, reasoning that RLR did not plead fraud with particularity in its complaint and consequently did not "allege facts in its Complaint that would support the second prong" of the corporate veil piercing test.

{¶ 7} The trial court affirmed and adopted the magistrate's findings. Subsequently, the trial court held a hearing regarding damages and the enforceability of the Late Fee Provision in the Lease. The court granted RLR breach of contract damages against Wilmington Horsemen in the amount of $272,594.[2] However, the court declined to enforce the Late Fee Provision against Wilmington Horsemen reasoning that the amount of late fees, $532,500, was unconscionable and an unenforceable penalty.

{¶ 8} RLR now appeals, asserting three assignments of error. On appeal, neither side challenges the trial court's ruling that Wilmington Horsemen, in its corporate capacity, is liable for the breach of contract damages. Instead, RLR contests the trial court's summary judgment determination that the Individuals are not liable for the judgment against Wilmington Horsemen. RLR argues that the trial court erred in refusing to pierce the corporate veil of Wilmington Horsemen and declining to enforce the Guaranty in the Lease. RLR also maintains that the court erred in refusing to enforce the Late Fee Provision against Wilmington Horsemen.

**Summary Judgment Standard**

{¶ 9} This court's review of a trial court's decision granting summary judgment is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-

---

2. This amount included $302,594 in unpaid rent less a $30,000 credit for Wilmington Horsemen's security deposit.

215, 2013-Ohio-4124, ¶ 16. To prevail on a motion for summary judgment, the moving party must show that (1) there are no genuine issues of material fact remaining to be litigated, (2) it is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C). The "moving party has the initial burden of *demonstrating* that there is no genuine issue of material fact concerning an essential element of the opponent's case." (Emphasis sic.) *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party fails to satisfy its initial burden, its motion for summary judgment must be denied. *Id.* at 293. If the moving party satisfies its initial burden, the nonmoving party may not rest on the allegations or denials of its pleadings, but instead must meet its reciprocal burden under Crim.R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.*

## Piercing the Corporate Veil

{¶ 10} In the first assignment of error, RLR argues that the trial court erred when it refused to pierce the corporate veil of Wilmington Horsemen and hold the Individuals personally liable. RLR argues that the court erroneously applied a pleading standard to dismiss RLR's efforts to pierce the corporate veil and instead should have reviewed this cause of action under a summary judgment standard. RLR asserts that when reviewing the evidence set forth, it is clear that the court should have pierced the corporate veil of Wilmington Horsemen and hold the Individuals liable.

{¶ 11} The principle that shareholders of a "corporation are generally not liable for the debts of the corporation is ingrained in Ohio law." *Flagstar Bank, FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 9, quoting *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶ 16. However, notwithstanding the protections afforded by the corporate form, shareholders are not absolutely immune from liability for the actions of the corporation for, "[l]ike every other fiction of the law, when urged to an intent and purpose

not within its reason and policy, [the corporate form] may be disregarded." *Dombroski* at ¶ 17, quoting *State ex rel. Atty. Gen. v. Std. Oil Co.*, 49 Ohio St. 137 (1892), paragraph one of the syllabus. In other words, "in certain circumstances, the corporate form may be disregarded, and the corporate veil pierced, for the purpose of reaching the assets of the corporation's individual shareholders." *Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464, 2009-Ohio-1247, ¶ 8.

{¶ 12} In *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274 (1993), the Ohio Supreme Court established a three-pronged test for courts to use when deciding whether to pierce the corporate veil. The test, which "focuses on the extent of the shareholder's control of the corporation and whether the shareholder misused the control so as to commit specific egregious acts that injured the plaintiff," provides the following:

> The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to *commit fraud or an illegal act* against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

(Emphasis added.) *Id.* at paragraph three of the syllabus; *Dombroski* at ¶ 18.

{¶ 13} In *Dombroski*, the Ohio Supreme Court expanded the second prong of the *Belvedere* test to read as follows: "To fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, *or a similarly unlawful act.*" (Emphasis added.) *Id.* at syllabus. The Court specifically rejected an expansion of the second prong to allow for unjust or inequitable acts. *Id.* at ¶ 26-27. The Court also noted that it continues to adhere to the "principle that limited shareholder liability is

- 6 -

the rule * * * and piercing the corporate veil is the 'rare exception' that should only be 'applied in the case of fraud or certain other exceptional circumstances.'" *Id.*, quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655 (2003).

{¶ 14} In support of its argument that the court erred when it granted summary judgment to the Individuals by applying a pleading theory to dismiss RLR's efforts to pierce the corporate veil, RLR cites *Callahan v. Warren City School Dist. Bd. Of Educ.*, 11th Dist. Trumbull No. 4027, 1988 WL 129448 (Dec. 2, 1988). In *Callahan,* the court held that converting a motion for summary judgment to a motion to dismiss for failure to state a claim upon which relief can be granted is in error. *Id.* at *2.

{¶ 15} Other districts have disagreed with *Callahan* and found that a trial court may convert a motion for summary judgment into a motion to dismiss for failure to state a claim. *Foy v. Trumbull Corr. Ins.*, 10th Dist. Franklin No. 11AP-464, 2011-Ohio-6298, ¶ 12; *Grenga v. Bank One, N.A.*, 7th Dist. Mahoning No. 04 MA 94, 2005-Ohio-4474, ¶ 80. These districts have reasoned that a conversion is proper because a party may raise the defense of failure to state a claim at any time. *Salata v. Vallas*, 159 Ohio App.3d 108, 111-12, 2004-Ohio-6037, ¶ 11 (7th Dist.), citing Civ.R. 12(H)(2). Further, a trial court may sua sponte dismiss a cause of action for failure to state a claim. *Foy* at ¶ 12; *Grenga* at ¶ 80. *See State ex rel. Kreps v. Christiansen*, 88 Ohio St.3d 313 (2000). *See also State ex rel. Finfrock v. Foley*, 69 Ohio St.3d 1481 (1994) (on motion for summary judgment, treated as motion to dismiss). We find this approach persuasive. The trial court did not err in analyzing the Individuals' motion for summary judgment under a pleading standard.

{¶ 16} While the court was permitted to analyze the Individuals' summary judgment motion under a pleading standard, the court's reasoning that RLR failed to state a claim upon which relief could be granted because it did not plead fraud with particularity pursuant to Civ.R. 9(B) was incorrect. As discussed above, a plaintiff is "not required to plead fraud in

order to fulfill the second prong of the piercing the corporate veil test for 'a plaintiff may also meet that prong by demonstrating 'an illegal act, or a similarly unlawful act.'" *Flagstar Bank* at ¶ 15, quoting *RCO Internatl. Corp. v. Clevenger*, 180 Ohio App.3d 211, 2008-Ohio-6823, ¶ 12 (10th Dist.). In this case, RLR seeks to pierce the corporate veil of Wilmington Horsemen by demonstrating that the Individuals unlawfully breached the contract. Therefore, RLR was not required to plead fraud in its complaint.

{¶ 17} Nevertheless, the trial court did not err in granting summary judgment to the Individuals as there was no evidence that the Individuals managed Wilmington Horsemen so that it committed an illegal act or similarly unlawful act. Instead, the evidence established that Wilmington Horsemen simply failed to make timely rent payments since December 2005 and owes RLR $302,594 in unpaid rent. Breach of contract without more is insufficient conduct to pierce the corporate veil. *See Jewell v. Victorian Village Internal Medicine*, 10th Dist. Franklin No. 08AP-919, 2009-Ohio-2233, ¶ 13; *Huttenbauer Land Co., L.L.C. v. Harley Riley, Ltd.*, 1st Dist. Hamilton No. C-110842, 2012-Ohio-4585, ¶ 17.

{¶ 18} The trial court did not err in granting summary judgment in favor of the Individuals in regards to RLR's request to pierce the corporate veil. RLR's first assignment of error is overruled.

**Guaranty**

{¶ 19} In the second assignment of error, RLR argues the trial court erred when it refused to enforce the Guaranty against the Individuals. Specifically, RLR maintains that the court erred in finding that two clauses in the Guaranty, the Expiration Clause and the Survival Clause, created an ambiguity regarding the length of time the Guaranty was enforceable. RLR asserts while the Expiration Clause provided that the Guaranty would expire in October 2007, the Survival Clause specifically stated that the obligations already created under the contract would not be subject to any termination of the Guaranty and therefore the Individuals

remained personally liable.

{¶ 20} Courts construe guaranty agreements in the same manner as they interpret contracts. *MidAm Bank v. Dolin*, 6th Dist. Lucas No. L-04-1033, 2005-Ohio-3353, ¶ 59, citing *G.F. Business Equip. v. Liston*, 7 Ohio App.3d 223, 224 (10th Dist.1982). We review issues of contract interpretation de novo. *Pierce Point Cinema 10, L.L.C. v. Perin-Tyler Family Found., L.L.C.*, 12th Dist. Clermont No. CA2012-02-014, 2012-Ohio-5008, ¶ 10. In interpreting a contract, courts are to give effect to the intent of the parties and to examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. *Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. The court's construction of a contract should attempt to harmonize all the provisions of the document rather than to produce conflict in them. *Pierce Point* at ¶ 11, citing *Farmers Natl. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 337 (1911). A contract should also be construed so as to give effect to all of its provisions. *Id.*

{¶ 21} A guaranty must clearly manifest intent to bind the defendant. *G.F. Business Equip.* at 224. Words used in a guaranty are to be interpreted "'in light of the surrounding circumstances and of the object intended to be accomplished.'" *Id.*, quoting *Morgan v. Boyer*, 39 Ohio St. 324 (1883). However, the clear and unambiguous terms of an instrument of guaranty will not be extended by construction or implication to cover a period of time not embraced within those terms. *Fairview Realty Investors, Ltd. v. Seaair, Inc.*, 8th Dist. Cuyahoga No. 81296, 2002-Ohio-6819, ¶ 10. If a contract is ambiguous so that it may either extend or limit a guarantor's obligation, such contract should be construed to limit the obligation. *Singer v. Bergsman*, 8th Dist. Cuyahoga No. 59682, 1992 WL 10286, *1 (Jan. 23, 1992).

{¶ 22} In the case at bar, the Survival Clause in the Guaranty provided:

No revocation or termination of this Guaranty shall affect in any

manner rights arising under this Guaranty with respect to (a) liabilities which have been created, contracted, assumed or incurred prior to receipt of Lessor of written notice of such revocation or termination or (b) liabilities which have been created, contracted, assumed, or incurred after receipt of written notice but pursuant to any contract or Lease Agreement entered into by Lessor prior to receipt of such notice. The sole effect of revocation or termination of the Guaranty shall be to exclude from the Guaranty liabilities arising after receipt of revocation which are unconnected with liabilities arising or transaction entered into before receipt of written notice of revocation or termination.

{¶ 23} The Guaranty also contains an Expiration Clause, which stated:

This Guaranty, and all personal obligations pledged by the undersigned with regard to this Guaranty, shall terminate without notice sixty (60) months from the date this Guaranty is executed.

The Guaranty was executed on October 14, 2002. Therefore, the Guaranty terminated on October 14, 2007. The Lease ended by agreement in November 2008.

{¶ 24} In finding that the two clauses created an ambiguity, the trial court relied on *Norris v. D.D. Fashions, Inc.*, 9th Dist. Summit No. 14843, 1991 WL 47600 (Apr. 3, 1991); and *Yearling Properties, Inc. v. Tedder*, 53 Ohio App.3d 52 (10th Dist.1988), for the proposition that if there is any doubt or ambiguity as to whether an obligation arising under a guaranty is intended to continue, the guaranty is construed as limited to its original term. However, those cases involved the length of time a guaranty was enforceable when the underlying contract for the guaranty was extended but there was no language in the guaranty authorizing an extension. *Norris* at *2; *Yearling* at 53-54. Unlike *Norris* and *Yearling*, the issue in this case is not whether the Guaranty addressed a specific situation, as the Survival Clause expressly provided that in the event that the Guaranty was terminated, all obligations entered into prior to that termination would not be affected. Instead, this case involves how to construe and harmonize the two clauses.

{¶ 25} We find the Survival Clause and Expiration Clause do not create an ambiguity

- 10 -

regarding when the Individuals' personal liability under the Lease expires. Reading the Guaranty as a whole and giving effect to all the provisions, the Survival Clause elucidates the consequences of the subsequent Expiration Clause regarding the Individuals' liabilities under the Lease. The Survival Clause clearly provided that the "*sole effect* of revocation or termination of the Guaranty shall be to exclude from the Guaranty liabilities *arising after* receipt of revocation *which are unconnected* with liabilities arising * * * *before receipt of written notice* of revocation or termination." (Emphasis added.) Therefore, reading these two clauses together, it is clear that the while the Expiration Clause said that it would terminate in 60 months, this did not affect liabilities arising "before receipt of written notice of revocation or termination." Instead, the Expiration Clause merely ceased the Individuals' liability under the Guaranty after the Guaranty terminated but, pursuant to the Survival Clause, did not affect liabilities incurred prior to the termination.

{¶ 26} RLR's breach of contract damages involve both liabilities which have been incurred prior to Guaranty's termination -- damages incurred before October 14, 2007 -- and liabilities incurred after termination but pursuant to any contract, i.e., the Lease, entered into prior to termination of the Guaranty. While the Individuals would not be liable under the Guaranty for any liabilities incurred pursuant to a contract after the Guaranty expired, the Individuals' liabilities were incurred prior to the expiration of the Lease. Therefore, the Individuals are liable for the entire breach of contract damages.

{¶ 27} The trial court erred by granting summary judgment in favor of the Individuals and refusing to enforce the Guaranty. The Guaranty clearly provided that the Individuals are personally liable for the breach of contract damages incurred by Wilmington Horsemen. The Guaranty is enforceable against the Individuals and summary judgment should have been granted in favor of RLR in regards to this issue. RLR's second assignment of error is sustained.

**Late Fees**

{¶ 28} In the third assignment of error, RLR argues that the trial court erred when it refused to enforce the Late Fee Provision in the Lease because the amount of late fees were unconscionable and an unenforceable penalty. Instead, RLR asserts the court should have enforced the Late Fee Provision because the Lease was a commercial transaction where the parties had equal bargaining power and amount of late fees was reasonable.

{¶ 29} Parties are generally free to enter into contracts that include a provision which apportion damages in the event of default. *Unifirst Corp. v. Yusa Corp.*, 12th Dist. Fayette No. CA2002-08-014, 2003-Ohio-4463, ¶ 30, citing *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381 (1993). However, "[i]n certain circumstances * * * complete freedom of contract is not permitted for public policy reasons. One such circumstance is when stipulated damages constitute a penalty." *Lake Ridge* at 381. Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, "[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *Id.*

{¶ 30} A remedy is considered to be punitive if it subjects the breaching party to a liability "disproportionate to the damage which could have been anticipated from breach of the contract." *Id.* A penalty is designed to coerce performance by punishing nonperformance; its principal object is *not* compensation for the losses suffered by the non-breaching party. *Id.* However, parties may contract for liquidated damages to be paid in the event of a breach, when the provision does not disregard the principle of compensation. *Westbrock v. W. Ohio Health Care Corp.*, 137 Ohio App.3d 304, 322 (2d Dist.2000).

{¶ 31} The test developed in Ohio to review a stipulated damages provision is as follows:

Where the parties have agreed on the amount of damages,

ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Lake Ridge* at 382, quoting *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27 (1984), paragraph one of the syllabus.

{¶ 32} When reviewing a stipulated damages provision, a court must view the provision, "in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach." *Id.* at 382. The question of whether a stipulation in a contract constitutes liquidated damages, a penalty, or a forfeiture is a question of law. *Id.* at 380. Therefore, an appellate court must review this question de novo. *Id.*

{¶ 33} In the case at bar, the Late Fee Provision provided: "A late charge of $500.00 per day shall be assessed in the event the Base Rent is not RECEIVED by the Lessor within ten (10) days after the date rent is due." It is undisputed that Wilmington Horsemen defaulted on the rent payments on December 31, 2005 and was not current with its rent obligation for the remainder of the Lease, which terminated by agreement on November 30, 2008. Therefore, RLR assessed Wilmington Horsemen with a late charge of $500 per day during the period when it was untimely with the rent payments, for a total late fee obligation of $532,500.

{¶ 34} The facts support a finding that the late fee charge of $532,500 is an unenforceable penalty. While parties are free to enter into contracts that contain provisions which apportion damages in the event of the default, it is clear that the late fees are not

designed to compensate RLR for damages it incurred but instead to punish Wilmington Horsemen. RLR has failed to put forth any evidence of additional costs it incurred to justify these expenses or how the late charges are reasonably related to the damages sustained. *See B&G Properties Ltd. Partnership v. Office Max, Inc.*, 8th Dist. Cuyahoga No. 99741, 2013-Ohio-5255, ¶ 32. The late fee charge is approximately *one and a half times* the amount of back rent Wilmington Horsemen owes RLR. Other courts have invalidated substantially smaller late fee awards in proportion to the actual damages incurred. *See WIS-Bay, LLC v. Bay City Partners, LLC*, N.D. Ohio No. 3:08 CV 1730, 2009 WL 1661649 (June 12, 2009), *8 (invalidating $4 million late charge when total loan was $9 million); *200 West Apartments v. Foreman*, 8th Dist. Cuyahoga No. 66107, 1994 WL 505271(Sept. 15, 1994) ($166 late fee charge unenforceable when plaintiff incurred $754 in back rent); *Wadsworth v. Starcher*, 11th Dist. Ashtabula No. 97-A-0054, 1998 WL 553160 (June 26, 1998) ($100 late fee reasonable in light of $900 past due rent).

{¶ 35} Consequently, the trial court did not err in denying RLR's motion to enforce the Late Fee Provision against Wilmington Horsemen as the $532,000 late fee is not to provide reasonable compensation of estimate actual damages flowing from the breach of contract but rather is an unenforceable penalty. RLR's third assignment of error is overruled.

{¶ 36} To summarize, we affirm the trial court's judgment denying RLR's request to hold the Individuals personally liable for damages on the basis of piercing the corporate veil of Wilmington Horsemen; we also affirm the judgment finding the Late Fee Provision to be an unenforceable penalty and refusing to enforce the same against Wilmington Horsemen or the Individuals; and we reverse the denial of RLR's request for summary judgment on the issue of the Individual's liability under the Guaranty and grant judgment to RLR against the Individuals for the damages resulting from the breach of contract.

{¶ 37} Judgment affirmed in part and reversed in part.

S. POWELL and PIPER, JJ., concur.