[Cite as *Fleming v. Kent State Univ.*, 2014-Ohio-3471.]

IN THE COURT OF APPEALS OF OHIO

TENON APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| James M. Fleming, | : | | |
| Plaintiff-Appellant/ Cross-Appellee, | : | | |
| | : | No. 13AP-942 | |
| v. | | (Ct. of Cl. No. 2011-09365) | |
| | : | | |
| Kent State University, | | (REGULAR CALENDAR) | |
| | : | | |
| Defendant-Appellee/ Cross-Appellant. | : | | |

D E C I S I O N

Rendered on August 12, 2014

*John F. Myers*, for appellant.

*Michael DeWine*, Attorney General, *Randall W. Knutti* and *Christopher P. Conomy*, for appellee.

APPEAL from the Court of Claims of Ohio

O'GRADY, J.

{¶ 1} Plaintiff-appellant/cross-appellee, James M. Fleming, and defendant-appellee/cross-appellant, Kent State University ("KSU"), appeal from a judgment of the Court of Claims of Ohio finding KSU breached the parties' employment contract but awarding Fleming no damages beyond his filing fee. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} In July 2011, Fleming filed a complaint against KSU for breach of an employment contract.[1] Under the contract, KSU agreed Fleming "shall be employed by [KSU] as its Football, Defensive Coordinator." (R. 1, exhibit A.) The contract was for a

---

[1] Fleming also alleged claims for defamation and invasion of privacy under the false light theory; however, he dismissed these claims before the liability trial began.

period of 28 months to terminate on June 30, 2012. Fleming's starting salary was $71,500 per year, but he could receive cost of living or merit-based raises. In addition, the contract provided if the football team achieved certain accomplishments, Fleming would receive bonuses of specific amounts depending on the type of accomplishment. For example, Fleming was entitled to a $6,000 bonus if the team made a bowl appearance. The contract also stated a "suitable automobile" would be provided for Fleming's use. (R. 1, exhibit A.)

{¶ 3} Fleming agreed to abide by all National Collegiate Athletic Association ("NCAA") rules and, "on an annual basis, report all athletic-related income from sources other than [KSU], including but not limited to, income from annuities, sports camps, housing benefits, complimentary ticket sales, television and radio programs, endorsements or consultation Contracts with athletic shoe, apparel, or equipment manufacturers." (R. 1, exhibit A.) Also, the contract provided that, subject to Fleming's continuing compliance with NCAA and KSU rules, if the contract was terminated prior to June 30, 2012, except for cause, the initiating party had to pay the other party an "agreed upon early termination cost." (R. 1, exhibit A.) KSU agreed if it was the initiator, "it shall pay the balance of the then in effect base salary due for the remaining term." (R. 1, exhibit A.)

{¶ 4} The Court of Claims bifurcated the issues of liability and damages. At the liability trial, Fleming testified KSU hired him as an assistant defensive coach in the last year of head coach Doug Martin's contract. In December 2010, Darrell Hazell became the new head coach. Fleming interviewed for a position on Hazell's staff. Fleming testified that sometime in the first two weeks of January 2011, Tom Kleinlein, KSU's executive associate athletic director, orally told him "as a courtesy" that Hazell had "completed his staff" and "there would be no football coaching job available for [Fleming] at [KSU]." (Tr. 69.) On January 21, 2011, Kleinlein sent Fleming a letter stating:

> With the new leadership of the football program in the Athletic Department, your position in the department is being reassigned. Attached is the position description for your reassignment. Your reassignment is effective on Monday, February 14, 2011.
>
> Should you choose not to accept your new assignment, we will consider your decision as your resignation.

(Plaintiff's exhibit D.)   The description was for assistant to the athletic director, a non-coaching position.

{¶ 5}   Fleming testified Kleinlein's letter was "not the first I heard of the reassignment.  Through telephone conference, upon being told I would no longer be - - have a football coaching job at [KSU], I asked the question subsequent to that, how are we going to handle my exit from [KSU], because of my understanding of the contract."  (Tr. 69-70.)  Fleming did not accept the new position.

{¶ 6}   On February 18, 2011, Joel Nielsen, KSU's director of athletics, sent Fleming the following letter:

> Our attorney has been in communication with your attorney but despite our attorney trying to somewhat accommodate your situation, those negotiations failed. It is now necessary to make [KSU's] final, formal position regarding your status clear.
>
> You are expected to show up for work at 9:00 a.m. Monday, February 21 at the office of Thomas Kleinlein. I have attached the job description which outlines the duties you are to undertake and for which we will provide you an office space and phone. You will continue to receive the same salary and health and welfare benefits that you have been receiving.  We will provide you appropriate release time for job interviews and travel to them.
>
> Be advised that failure to report for work would be an act of insubordination for which you would be disciplined up to and including termination. Termination would include removing you from the payroll and cancellation of all benefits.

(Plaintiff's exhibit E.)  Fleming did not go to work on February 21, 2011.

{¶ 7}   On March 7, 2011, Lester Lefton, KSU's president, sent Fleming a letter purporting to terminate Fleming's employment as the assistant to the athletic director because of insubordination, effective March 10, 2011.  KSU paid Fleming through March 15, 2011.  KSU took his vehicle, but he could not recall precisely when.  However, Fleming introduced evidence KSU cancelled his salary deduction for vehicle-related expenses effective February 17, 2011.

{¶ 8} Nielsen testified Hazell decided to not retain Fleming as a football coach in early January 2011. Nielsen and Laing Kennedy, KSU's former director of intercollegiate athletics, agreed the assistant to the athletic director position was not a coaching job. KSU did not advertise the position or fill it after Fleming rejected it.

{¶ 9} After the liability trial, the Court of Claims found the contract was silent on the issue of reassignment. The Court of Claims found Fleming could reasonably anticipate reassignment within the coaching staff but not to a non-coaching position. The Court of Claims found the reassignment amounted to a constructive discharge, so KSU breached the contract, and Fleming was entitled to judgment.

{¶ 10} In lieu of a damages trial, the parties filed briefs. Fleming sought liquidated damages under the contract's stipulated damages clause. KSU argued the clause was an unenforceable penalty because when the parties signed the contract, damages in the event of a breach were not uncertain as to amount and difficult of proof. KSU argued damages should be the amount Fleming would have earned if he completed the contract less what he earned or could have earned with reasonable efforts to secure another job. KSU argued Fleming mitigated his damages by securing a higher paying job at another university where he earned more than he would have if he completed the contract with KSU. The Court of Claims agreed with KSU and awarded Fleming $25 for his court filing fee.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Fleming appeals and presents three assignments of error for our review:

ASSIGNMENT OF ERROR I

In the liability phase, the trial court erred in finding that Appellee's act of reassigning Appellant constituted a breach of the employment contract.

ASSIGNMENT OF ERROR II

In the liability phase, the trial court erred in finding that Appellant was constructively discharged from employment with Appellee.

ASSIGNMENT OF ERROR III

In the damages phase, the trial court erred in finding that the stipulated damages clause of the Employment Contract was an unenforceable penalty clause.

{¶ 12} In his brief, Fleming only presents one argument for his first two assignments of error. "Under App.R. 12(A)(2), we may choose to disregard any assignment of error an appellant fails to separately argue." *Glasstetter v. Rehab Servs. Comm.*, 10th Dist. No. 13AP-932, 2014-Ohio-3014, ¶ 12, citing *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 15. Nonetheless, we will consider his contentions.

{¶ 13} Kent State cross-appeals and presents one cross-assignment of error for our review:

> EMPLOYEES WHO ARGUE THAT CHANGES IN THEIR JOB DUTIES EFFECTED A CONSTRUCTIVE DISCHARGE MUST PROVE THAT THOSE CHANGES MADE THEIR JOBS SO DIFFICULT OR UNPLEASANT THAT A REASONABLE PERSON IN THEIR POSITION WOULD HAVE FELT COMPELLED TO RESIGN.

## III. DISCUSSION

### A. Breach of Contract

{¶ 14} In his first assignment of error, Fleming contends the Court of Claims erred when it found KSU's act of reassigning him constituted a breach of contract. In his second assignment of error, Fleming claims the Court of Claims erred when it found KSU constructively discharged him. In its cross-assignment of error, KSU also argues no constructive discharge occurred. We will address these assignments of error together.

{¶ 15} Fleming contends KSU breached the contract when Kleinlein told him Hazell completed his staff and there would not be a coaching position for Fleming. Fleming argues his reassignment was not a constructive discharge or breach of contract because KSU had already terminated him, and, in any event, the change in his duties would not have made working conditions so intolerable a reasonable person would have felt compelled to resign. Fleming views the "reassignment" as an offer he never accepted.

{¶ 16} In response, KSU argues for the first time it could not have breached the contract through the actions of Hazell or Kleinlein because, under R.C. 3341.04,[2] only KSU's board of trustees had authority to fire Fleming. However, "[a] party may not change its theory of the case and present new arguments for the first time on appeal." *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-709, 2013-

---

[2] KSU cites R.C. 3341.05 but quotes from R.C. 3341.04 in its argument.

Ohio-2742, ¶ 13, citing *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177 (1992).  Therefore, we will disregard this contention.

{¶ 17} KSU also suggests it could reassign Fleming because the contract did not address reassignment.  KSU maintains Fleming's new duties were consistent with his qualifications and not so unpleasant as to amount to a constructive discharge.  According to KSU, Fleming abandoned his employment by refusing to report for work.

{¶ 18} "The construction of a written contract is a matter of law for a trial court." *Hodge v. Prater*, 10th Dist. No. 13AP-838, 2014-Ohio-3152, ¶ 10, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. " 'Because the "interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law," it is subject to de novo review on appeal.' " *Id.*, quoting *Sauer v. Crews*, 10th Dist. No. 12AP-320, 2012-Ohio-6257, ¶ 11, quoting *State v. Fed. Ins. Co.*, 10th Dist. No. 04AP-1350, 2005-Ohio-6807, ¶ 22.  "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties."  *N. Coast Premier Soccer, L.L.C. v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-589, 2013-Ohio-1677, ¶ 12, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989).  " 'The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.' "  *Id.*, quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus.

{¶ 19} Under the contract, KSU agreed Fleming "shall be employed by [KSU] as its Football, Defensive Coordinator."  (R. 1, exhibit A.)  The contract plainly obligates KSU to employ Fleming as a defensive coordinator.  The contract does not allow KSU to employ him as an assistant to the athletic director, a non-coaching position.  In light of this determination, we next address the issue of breach.

{¶ 20} "Where facts are undisputed, the determination of whether conduct constitutes a breach of contract is a question of law."  *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. No. 08AP-487, 2009-Ohio-2164, ¶ 29, citing *Corna/Kokosing Constr. Co. v. South-Western City School Dist. Bd. of Edn.*, 10th Dist. No. 02AP-624, 2002-Ohio-7028, ¶ 12, citing *Luntz v. Stern*, 135 Ohio St. 225 (1939), paragraph five of the syllabus.

{¶ 21} Here, the Court of Claims found KSU breached the contract when it reassigned Fleming, an act the court characterized as a constructive discharge.

"[C]onstructive discharge is a legal principle frequently applied to employment discrimination cases." *Mustafa v. St. Vincent Family Ctrs., Inc.*, 10th Dist. No. 12AP-305, 2012-Ohio-5775, ¶ 17, citing *King v. State Farm Mut. Auto Ins. Co.*, 112 Ohio App.3d 664, 669 (6th Dist.1996), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578 (1996). "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy* at paragraph four of the syllabus.

{¶ 22} Fleming maintains KSU breached the contract prior to his reassignment when in early January 2011, Kleinlein informed him "there would be no coaching position for him under the new head coach." (Appellant's Brief, 20.) However, it is not clear KSU actually removed Fleming as a football defensive coordinator at that time. Fleming's testimony suggests Kleinlein only notified him as a "courtesy" that such a move was imminent based on Hazell's selections. This conclusion is supported by the January 21, 2011 reassignment letter, KSU's continued payment of Fleming after the conversation with Kleinlein, and the fact that KSU did not cancel deductions from Fleming's salary for vehicle-related expenses until February 17, 2011.

{¶ 23} However, it is apparent KSU breached the contract on February 14, 2011, the effective date of Fleming's reassignment. The parties agree Fleming's reassignment would not have made working conditions intolerable. However, any error in the trial court's application of the principle of constructive discharge was harmless. *See* Civ.R. 61; *Reid v. Plainsboro Partners, III*, 10th Dist. No. 09AP-442, 2010-Ohio-4373, ¶ 20, citing *Columbus Steel Castings Co. v. King Tool Co.*, 10th Dist. No. 08AP-385, 2008-Ohio-6309, ¶ 7 (stating "an appellate court need not reverse an otherwise correct judgment merely because the trial court utilized different or erroneous reasons as the basis for its determination"). KSU had to employ Fleming as a football defensive coordinator under the contract. Regardless of how tolerable his new position would be, KSU's reassignment of Fleming breached the contract because KSU was no longer employing Fleming in the position to which it had agreed to employ him. Thus, the Court of Claims correctly found the act of reassignment constituted a breach of contract even if the court's constructive

discharge analysis was in error. Accordingly, we overrule Fleming's first and second assignments of error and KSU's cross-assignment of error.

## B. Liquidated Damages

{¶ 24} In his third assignment of error, Fleming contends the Court of Claims erred when it found the contract's stipulated damages clause provided for an unenforceable penalty instead of liquidated damages.

{¶ 25} "As a general rule, parties are free to enter into contracts that contain provisions which apportion damages in the event of default." *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381 (1993); *see Triangle Properties, Inc. v. Homewood Corp.*, 10th Dist. No. 12AP-933, 2013-Ohio-3926, ¶ 37, citing *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 28 (1984) ("In Ohio, clauses in contracts providing for reasonable liquidated damages are recognized as valid and enforceable."). However, "[i]n certain circumstances * * * complete freedom of contract is not permitted for public policy reasons. One such circumstance is when stipulated damages constitute a penalty." *Lake Ridge Academy* at 381. Whether a stipulated-damages provision constitutes enforceable liquidated damages or an unenforceable penalty is a question of law for the court. *Fox v. Roscoe*, 10th Dist. No. 98AP-670 (Mar. 9, 1999), citing *Lake Ridge Academy* at 380.

{¶ 26} "Determining whether stipulated damages are punitive or liquidated is not always easy: '[I]t is necessary to look to the whole instrument, its subject-matter, the ease or difficulty of measuring the breach in damages, and the amount of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach, and also to the intent of the parties ascertained from the instrument itself in the light of the particular facts surrounding the making and execution of the contract.' " *Lake Ridge Academy* at 381-82, quoting *Jones v. Stevens*, 112 Ohio St. 43 (1925), paragraph one of the syllabus. "[W]hen a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced." *Id.* at 382, citing 3 Restatement of the Law 2d, Contracts, Section 356(1), at 157 (1981).

{¶ 27} The test developed in Ohio to determine a stipulated damages provision is as follows:  " 'Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.' "  *Lake Ridge Academy* at 382, quoting *Samson Sales, Inc.* at paragraph one of the syllabus, citing *Jones* at paragraph two of the syllabus.

{¶ 28} At the trial level, KSU argued the stipulated damages clause did not satisfy the first part of this test; the Court of Claims agreed.  Fleming contends when the parties entered into the contract, the damages he might suffer if KSU breached the agreement were uncertain as to amount and difficult of proof.  Fleming highlights the fact that bonuses under the contract were dependent on the football team's academic and athletic performance.  Also, he could receive merit-based and cost of living salary increases. Fleming also argues the contract contemplated the possibility his coaching position would lead to income from sources such as television programs and endorsement or consultation contracts with manufacturers of athletic equipment.  In addition, he argues it is difficult to value use of the "suitable automobile" to which the contract entitled him.

{¶ 29} KSU counters that the loss of a car lease is not hard to value.  KSU also argues that Fleming did not have a television or radio show, did not have a contract related to athletic equipment, presented no evidence he earned income from any source aside from KSU during the 2010 season, and presented no evidence he would have earned income from any source aside from a third-party if he coached for KSU during the 2011 season.  In addition, the Court of Claims found it relevant that Fleming presented no evidence he would have been entitled to any bonuses had he not been terminated.

{¶ 30} However, the proper focus is on whether the damages the parties could anticipate Fleming would incur if KSU breached the contract were uncertain in amount and difficult of proof at the time the parties entered the contract.  *See Lake Ridge*

*Academy* at 382; *Kurtz v. W. Property, L.L.C.*, 10th Dist. No. 10AP-1099, 2011-Ohio-6726, ¶ 2, 30-32 (case involving breach of real estate contract, finding damages were uncertain as to amount and difficult of proof because of difficulties in assessing, at time of amendment of contract, what the fair market value of the property would be at time of breach); *Herrin v. First Community Village*, 10th Dist. No. 89AP-1013 (Apr. 19, 1990) (in liquidated damages analysis, evaluating certainty of amount of damages at the time the parties entered into the contract).   Even putting the issue of raises and the automobile aside, at the time of contracting, the parties could not predict whether the football team would achieve any of the goals that would entitle Fleming to bonuses under the contract. *See generally O'Brien v. Ohio State Univ.*, 139 Ohio Misc.2d 36, 2006-Ohio-4346, ¶ 3, 30-31 (finding damages head basketball coach would suffer if terminated other than for cause were uncertain as to amount and difficult of proof at time of contracting, in part, because contract contained numerous incentive clauses that impacted amount of compensation and duration of employment).

{¶ 31} Moreover, the contract's provision about NCAA rules on reporting athletic-related income from other sources suggests the parties were aware that, as a KSU football coach, collateral business opportunities might be available to Fleming.  The value of those opportunities would be difficult to predict.  *See generally id.* at ¶ 31 (finding damages uncertain and difficult of proof, in part, because liquidated damages clause expressed parties' "understanding that as coach of the men's basketball program, certain collateral business opportunities were available to plaintiff from third-party sources, and that the value of those opportunities would be difficult to predict").  Thus, we conclude at the time of contracting in this case, damages were uncertain as to amount and difficult of proof.[3]

{¶ 32} KSU claims because the stipulated damages clause only entitled Fleming to recover his base salary, Fleming cannot argue the clause was intended to compensate him for lost bonuses and collateral business opportunities.  However, it is unclear how this argument relates to the issue of whether damages were uncertain as to amount or difficult of proof at the time of contracting.

---

[3] We note that even at the time of breach, the parties could not know what future bonuses or business opportunities Fleming was missing out on due to the early termination.

{¶ 33} Next, Fleming contends the stipulated damages clause satisfied the other two parts of the *Samson Sales, Inc.* test. However, the Court of Claims never ruled on these parts of the test. After incorrectly finding the first part of the test was not met, the Court of Claims ended its analysis. We decline to address whether the remaining parts of the test were satisfied in the absence of their consideration in the first instance by the Court of Claims. Instead, we limit our holding to the confines of the Court of Claims' decision.

{¶ 34} Therefore, to the extent the Court of Claims erred when it found the stipulated damages clause was an unenforceable penalty because it did not satisfy the first part of the *Samson Sales, Inc.* test, we sustain Fleming's third assignment of error. However, we remand to the Court of Claims to determine whether the stipulated damages clause satisfies the other two parts of the test and to award damages consistent with its determination.

## IV. CONCLUSION

{¶ 35} We overrule Fleming's first and second assignments of error and KSU's cross-assignment of error. We sustain Fleming's third assignment of error to the extent the Court of Claims erred in finding the stipulated damages clause did not satisfy the first part of the *Samson Sales, Inc.* test. However, we decline to address the other two parts of that test in the first instance. Accordingly, we affirm the Court of Claims' judgment in part, reverse it in part, and remand this matter to the Court of Claims of Ohio for further proceedings consistent with this decision.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded with instructions.*

SADLER, P.J., and TYACK, J., concur.