[Cite as *DN Reynoldsburg, L.L.C. v. Maurices Inc.*, 2023-Ohio-3492.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| DN Reynoldsburg, L.L.C., | : | |
| Plaintiff-Appellant, | : | No. 22AP-683 |
| | | (C.P.C. No. 18CV-7616) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Maurices Incorporated, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 28, 2023

**On brief:** *Carpenter Lipps & Leland LLP, David A. Wallace,* and *Karen M. Cadieux*, for appellant. **Argued:** *David A. Wallace.*

**On brief:** *Perez & Morris LLC, Kevin L. Murch*, and *Amy K. Cooper*, for appellee. **Argued:** *Kevin L. Murch.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintif-appellant, DN Reynoldsburg, LLC ("DNR"), seeks review of a judgment from the Franklin County Court of Common Pleas granting summary judgment against DNR and in favor of defendant-appellee, Maurices Incorporated ("Maurices"), in a breach of contract matter regarding a shopping center lease. After review, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} DNR is a real estate developer specializing in retail shopping centers. DNR is the landlord of a shopping center known as the Shoppes at East Broad ("Shoppes").

{¶ 3} Sports Authority, TJ Maxx, and PetCo are the inducement tenants in the Shoppes. Sports Authority and TJ Maxx are also identified as anchor tenants. The lease allows the replacement of an anchor tenant with a comparable national or regional retailer.

{¶ 4} DNR entered into a lease with Maurices, a retail store selling women's clothing, to occupy space in the Shoppes in July 2015. The lease has a ten-year initial term with three, five-year extensions at Maurices' option.

{¶ 5} The lease provides for annual minimum rent to be paid in monthly payments beginning at $7,083.33 for the first 5 years, and gradually increasing to $8,750.00 in years 20 through 25. Maurices is also responsible for additional charges on a pro rata basis for common area maintenance and taxes.

{¶ 6} Pursuant to the lease, Maurices shall pay substitute rent in lieu of annual minimum rent and additional charges in certain circumstances. This reduced rent is defined as 5 percent of Maurices' gross sales.

{¶ 7} The lease has two co-tenancy conditions. The opening co-tenancy condition allows Maurices the option to either terminate the lease or open and pay substitute rent until all inducement tenants are open and operating. There is no temporal limit. The ongoing co-tenancy condition allows Maurices to pay substitute rent if an anchor tenant is not open and operating. This provision only applies for 30 consecutive months, at which time Maurices may terminate the lease or begin paying the annual minimum rent and additional charges for the remainder of the lease term.

{¶ 8} The co-tenancy conditions are identified as an express inducement for Maurices to enter into the lease. The requirement of the inducement tenants to open and operate is a specific inducement to Maurices to open its store.

{¶ 9} Sports Authority filed for Chapter 11 bankruptcy in March 2016, converted to Chapter 7 bankruptcy in July 2016, and never opened. Rooms For Less, a furniture store, was substituted as an anchor tenant and opened in September 2017.

{¶ 10} In August 2016, Maurices chose to open despite the missing inducement tenant, and commenced paying substitute rent to DNR.

{¶ 11} In September 2018, DNR brought an action against Maurices for breach of contract for failure to pay full rent and requested declaratory relief finding that the substitute rent payments are an unenforceable penalty.

{¶ 12} DNR moved for partial summary judgment on the unenforceable penalty claim and Maurices moved for summary judgment on the unenforceable penalty claim and breach of contract claim.

{¶ 13} On January 7, 2020, the trial court granted summary judgment on both claims in favor of Maurices. DNR appealed in *DN Reynoldsburg, L.L.C. v. Maurices, Inc.*, 10th Dist. No. 20AP-57, 2022-Ohio-949.

{¶ 14} This court reversed, finding a question of material fact remained if Rooms for Less was a comparable replacement as an anchor tenant. *Id.*

{¶ 15} On remand, DNR again moved for partial summary judgment on its declaratory judgment claim and Maurices again moved for summary judgment against DNR's claims. The trial court granted Maurices' motions and denied DNRs.

{¶ 16} The lease provides that a prevailing party in a breach of contract action receives attorney fees; Maurices has been awarded $145,000 in attorney fees to date.

{¶ 17} DNR now brings this appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 18} DNR assigns the following three assignments of error for our review:

[1.] The trial court erred in granting summary judgment to Maurices Incorporated on the breach of contract claim because the Lease is silent on what happens when an Inducement Tenant can never open and the opening co-tenancy requirement is impossible to satisfy, and does not specifically preclude replacement of an Inducement Tenant.

[2.] The trial court erred in granting summary judgment to Maurices Incorporated on the breach of contract claim because the Lease is ambiguous as to what happens when an Inducement Tenant can never open and the opening co-tenancy requirement is impossible to satisfy, and the Lease can reasonably be interpreted to allow replacement of an Inducement Tenant and does not specifically preclude replacement.

[3.] The trial court erred in granting summary judgment to Maurices Incorporated and denying summary judgment to DN Reynoldsburg, LLC on the declaratory judgment claim, because a condition precedent can operate as an unenforceable penalty, and the trial court's conclusion that the Lease precludes the replacement of an Inducement Tenant results in a 73% reduction in rent payments and $2,000,000.00 windfall to Maurices Incorporated that is unquestionably penal to DN Reynoldsburg, LLC.

### III. STANDARD OF REVIEW

{¶ 19} Appeal courts review cases involving a grant of summary judgment using a de novo standard of review, governed by the standards of Civ.R. 56. *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, ¶ 19. "Because the 'interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law,' it is subject to de novo review on appeal." (Citation omitted.) *Fleming v. Kent State Univ.*, 10th Dist. No. 13AP-942, 2014-Ohio-3471, ¶ 18, quoting *Hodge v. Prater*, 10th Dist. No. 13AP-838, 2014-Ohio-3152, ¶ 10.

{¶ 20} "Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the non-moving party." *Harman v. Am. Alliance for Creditor Attorneys*, 10th Dist. No. 09AP-133, 2009-Ohio-4839, ¶ 11, citing Civ.R. 56(C).

{¶ 21} The moving party has the initial burden of informing the trial court of the basis for their motion with Civ.R. 56 evidence and pointing out relevant parts of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once the movant meets the initial burden, the non-moving party then has the burden to set forth specific facts that show a genuine issue remains for trial. *Id.*

### IV. LEGAL ANALYSIS

{¶ 22} DNR's first assignment of error addresses whether the lease was silent on whether an inducement tenant can be replaced, and its second assignment of error questions whether the lease was ambiguous as to whether an inducement tenant can be replaced. We shall combine both assignments of error for review.

{¶ 23} "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." *N. Coast Premier Soccer, L.L.C. v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-589, 2013-Ohio-1677, ¶ 12. In determining the intent of the parties, the court must read the contract as a whole and give effect to every part of the contract, if possible. *Clark v. Humes*, 10th Dist. No. 06AP-1202, 2008-Ohio-

640; *Foster Wheeler Envirespons, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-62 (1997). The intent of each party is to be gathered from a consideration of the contract as a whole. *Harden v. Univ. of Cincinnati Med. Ctr.*, 10th Dist. No. 04AP-154, 2004-Ohio-5548, ¶ 21.

{¶ 24} The construction of a written contract is a matter of law. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. Common words in a contact must be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly intended, based upon the face or overall contents of the document. *Id.* at paragraph two of the syllabus.

{¶ 25} When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether or not an ambiguity exists. *Buckeye Corrugated, Inc. v. DeRycke*, 9th Dist. No. 21459, 2003-Ohio-6321. "[I]f the contract terms are clear and precise, the contract is not ambiguous and the trial court is not permitted to refer to any evidence outside of the contract itself." *Ryan v. Ryan*, 9th Dist. No. 19347, 1999 Ohio App. LEXIS 5001, *4 (Oct. 27, 1999).

{¶ 26} When the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement give the plain language special meaning, extrinsic evidence can be used to ascertain the intent of the parties. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). Contract language is ambiguous if its meaning cannot be determined from the four corners of the contract or if the contract language is susceptible to two or more conflicting, yet reasonable, interpretations. *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, ¶ 18 (10th Dist.).

{¶ 27} This is not a breach of contract action, but rather DNR trying to escape a contract that turned out bad for them. Neither party is asserting a breach of contract and seeking damages. Maurices is simply performing within the parameters of the lease.

{¶ 28} The lease contains two co-tenancy requirements that address what happens if an inducement or anchor tenant either never opens or opens and later closes. Here, an inducement tenant, Sports Authority, filed for bankruptcy protection and never opened in the Shoppes.

{¶ 29} DNR located a replacement anchor tenant, Rooms for Less, and substituted Rooms for Less for Sports Authority as an anchor tenant pursuant to section 8.03(c) of the

lease.   Because Sports Authority is also an inducement tenant, we look to the lease for guidance on how to replace an inducement tenant in section 8.03(b) and find no provision that allows for such replacement.

{¶ 30} It is this conspicuous lack of language or silence that DNR asserts interpretation and extrinsic evidence will demonstrate that the parties intended to replace an inducement tenant.   DNR's fix is to simply insert the "comparable replacement" language into the opening co-tenancy condition, and Rooms for Less is the new inducement tenant.

{¶ 31} "The fact that a contract or lease is silent on a particular point does not make it ambiguous." *Statler Arms*, *Inc. v. APCOA*, *Inc.*, 92 Ohio Misc.2d 45, 54 (1997).   Silence on a particular point or the total absence of a provision from a contract or lease, is evidence of an intention of the parties to exclude this item from the contract or lease, rather than evidence of an intention to include it.  *Atelier Dist., L.L.C. v. Parking Co. of Am., Inc.*, 10th Dist. No. 07AP-87, 2007-Ohio-7138.

{¶ 32} When one clause includes a replacement provision and a similar clause does not, it becomes clear that other provisions are impliedly excluded.   The absence of the replacement language in the opening co-tenancy provision is not silence, but rather evidence of the intent of the parties.

{¶ 33} In *Yardmaster*, *Inc. v. Kish*, 11th Dist. No. 97-T-0160, 1998 Ohio App. LEXIS 4543 (Sept. 25, 1998), a lawn care provider planted grass seed under a contract that guaranteed the grass seed would germinate, but neither party watered the seeds and grass did not grow.  The contract contained exceptions to the guarantee but did not address who was responsible for watering the grass seed.  *Id.*  In swatting down the provider's argument that the contract was silent on the issue of watering and required analysis outside the four corners of the document, the Eleventh District found the contract did not contain a contingency requiring Kish to water the grass seed and affirmed judgment against the provider. *Id.*

{¶ 34} The absence of language addressing what happens if an inducement tenant files for bankruptcy does not trigger a determination of ambiguity.  This court must apply the plain language of the lease.  *Carasalina*, *L.L.C. v. Smith Phillips & Assocs.*, 10th Dist. No. 13AP-1027, 2014-Ohio-2423.

**{¶ 35}** This is a transaction between two experienced and sophisticated parties in the shopping center business. The fact that the lease contains specific language regarding the replacement of an anchor tenant but not an inducement tenant does not equate to silence, but rather a deliberate choice agreed upon by the parties.

**{¶ 36}** When the missing term could have been included but was not, "the courts should not insert by construction, for the benefit of one of the parties, an exception or condition which the parties either by design or neglect omitted from their own contract." *Yardmaster*, *Inc.* at 5. Principles of contract interpretation preclude a court from rewriting a lease by adding language the parties omitted. *DDR Rio Hondo*, *L.L.C. v. Sunglass Hut Trading*, *L.L.C.*, 8th Dist. No. 98986, 2013-Ohio-1800.

**{¶ 37}** The lease specifically provides guidance if an inducement tenant does not open. The tenant has the option of terminating the lease or opening and paying reduced rent. There is no "comparable replacement" language for inducement tenants by calculation and design. DNR argues that since the contract is silent on the issue of replacement of an inducement tenant there is uncertainty. However, since there is silence, this is part of the contract that DNR bargained and contracted for and the court cannot add language that changes the bargain.

**{¶ 38}** The lease is clear and unambiguous about the opening co-tenancy condition. The inducement tenants, and not any comparable replacement tenants, must open to trigger normal rent payments. As stated by the trial court, "if the Inducement Tenants open in the [Shoppes], Maurices pays Annual Minimum Rent. If the Inducement Tenants do not open in the [Shoppes], Maurices pays Substitute Rent." (Aug. 17, 2022 Decision at 8.) The lease contemplates an inducement tenant's failure to open—for any reason—and provides for the payment of substitute rent until the inducement tenant opens.

**{¶ 39}** The opening co-tenancy provision functions as a negotiated dual rent arrangement and allows Maurices to pay substitute rent if all the provisions are not met.

**{¶ 40}** The failure of the co-tenancy clause to address specific reasons and remedies regarding an inducement tenant's failure to open "means only that the clause is a narrow one—not that it is ambiguous." *McManus v. Eicher*, 2d Dist. No. 2003-CA-30, 2003-Ohio-6669, ¶ 13.

{¶ 41} DNR believes there is no reasonable basis to allow the replacement of an anchor tenant but not the replacement of an inducement tenant. However, this unfair result complained of by DNR is a consequence of the lease and is allowed under its terms.

{¶ 42} The general rule in contract interpretation is that if a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. *Alexander*, 53 Ohio St.2d 241. In addition, extrinsic evidence was unnecessary because the lease is not ambiguous. *Moody v. Ohio Rehab. Servs. Comm.*, 10th Dist. No. 02AP-596, 2002-Ohio-6965.

{¶ 43} The lease does not authorize the replacement of an inducement tenant. The lease is not silent on this issue. The plain language of the co-tenancy conditions is clear.

{¶ 44} DNR's first and second assignments of error are overruled.

{¶ 45} DNR's third assignment of error asserts the trial court erred by granting summary judgment to Maurices on DNR's request for declaratory judgment that a condition precedent cannot be an unenforceable penalty.

{¶ 46} DNR argues that if an inducement tenant cannot be replaced and Maurices is permitted to pay substitute rent for the 25-year total lease term, DNR suffers a penalty, and the act is unconscionable and would lead to a windfall for Maurices. We disagree.

{¶ 47} In the parties first round of summary judgment motions, Maurices successfully moved for summary judgment on DNR's declaratory action. DNR appealed the decision but did not cite the declaratory action as an assignment of error. A party who fails to challenge an adverse summary judgment finding on a first appeal cannot raise that issue on remand or in a second appeal from that remand. *Fed. Fin. Co. v. Turner*, 7th Dist. No. 05 MA 134, 2006-Ohio-7072.

{¶ 48} The law of the case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). The doctrine "precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal." *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404 (1996).

{¶ 49} The law of the case doctrine is "a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Nolan* at 3.

{¶ 50} Maurices argues in the trial court's January 7, 2020 decision that the clause was not a penalty still controls, because it was not challenged. However, the trial court again addressed the unenforceable penalty issue in its summary judgment decision dated August 17, 2022. We shall address whether the lease contains an unenforceable penalty clause.

{¶ 51} Parties are generally free to enter contracts that contain provisions for damages, but total freedom to contract must be balanced with public policy. *Kraft Elec. Contracting, Inc. v. Lori A. Daniels Irrevocable Trust*, 1st Dist. No. C-180361, 2019-Ohio-2029.

{¶ 52} A liquidated damages clause is valid and enforceable as "reasonable compensation for actual damages." *Triangle Properties v. Homewood Corp.*, 10th Dist. No. 12AP-933, 2013-Ohio-3926, ¶ 37.

{¶ 53} However, a liquidated damages clause will not be enforced if it is not strictly compensatory and amounts to a penalty. Because punitive damages are not available in a breach of contract action absent tortious conduct, stipulated damages that function as a penalty are not permitted. *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376 (1993).

{¶ 54} There is no breach of contract because Maurices is performing as required under the contract. Maurices is paying substitute rent because Sports Authority has not opened. Maurices is not seeking damages. The opening co-tenancy condition is not a liquidated damages provision that functions as a penalty. The contractual requirement that all inducement tenants open before Maurices is obligated to pay annual minimum rent and additional charges is a condition precedent.

{¶ 55} A condition precedent is an occurrence which must take place before a contractual obligation becomes effective. *Corey v. Big Run Indus. Park, L.L.C.*, 10th Dist. No. 09AP-176, 2009-Ohio-5129, ¶ 18. "Essentially, a condition precedent requires that an act must take place before a duty to perform a promise arises. If the condition is not fulfilled, the parties are excused from performing." *Atelier Dist.* at ¶ 35. An unsatisfied condition precedent can excuse performance and is a defense to a breach of contract claim. *WSB Rehab. Servs., Inc. v. Cent. Accounting Sys., Inc.*, 1st Dist. No. C-210454, 2022-Ohio-2160, ¶ 26.

{¶ 56} Here, Maurices is not required to pay annual minimum rent until the condition of having all inducement tenants is satisfied.  In the event the contingency is unfulfilled, there is no obligation to pay full rent.  " ' "The non-occurrence of a condition will prevent the existence of a duty in the other party." ' " *Corey* at ¶ 22, quoting *Morrison v. Bare*, 9th Dist. No. 23667, 2007-Ohio-6788, ¶ 18, quoting John Edward Murray, Jr., *Murray on Contracts*, Section 99B (4th Ed.2001).

{¶ 57} The condition that all inducement tenants open has not been meet, and Maurices' obligation to pay full rent is excused.  The fact that Maurices is paying a reduced amount of rent is not an issue of unconscionability, but rather a product of the lease.  The condition precedent has not been filled.

{¶ 58}  DNR's third assignment of error is overruled.

## V.  CONCLUSION

{¶ 59} The lease was clear and unambiguous and did not allow a change in the inducement tenant.  The substitute rent provisions were triggered by the failure of an inducement tenant to open, a condition precedent, and is not an unenforceable penalty.

{¶ 60}  For the foregoing reasons, we overrule DNR's three assignments of error, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*


BEATTY BLUNT, P.J., concurs.
DORRIAN, J., concurs in judgment only.

_____